## Douglas Oil Company et al. v. The State of Texas.
### (Whiteside Case)

No. 6338. Decided May 13, 1933.
(61 S. W., 2d Series, 804.)

*Francis H. DeGroat,* of Duluth, Minn., *Chas. A. Holden, John Rogers,* of Tulsa, Okla., *Chas. Gibbs, Smith & Neill, Harris, Harris & Sedberry,* of San Angelo, *J. R. Parten,* of Shreveport, La., *L. R. Kershaw,* of Muskogee, Okla., *Baker, Botts, Parker & Garwood, I. S. Handy, A. D. Dyess,* of Houston, *John A. Braly,* of Fort Worth, and *E. F. Smith,* of Austin, for appellants.

The Act of 1889 found in Gammel's Laws, Vol. 9, page 1131, which is Revised Statutes, 1911, article 5397, abrogates the rule of construction as announced in Boon v. Hunter and other precedent cases and excludes such rule of construction from application to suits involving the boundaries to alternate railway land grants. The statute in question required the field notes to be applied to such lands strictly as written, and requires this application to be made in four specific methods, to-wit:

(a)  By the corners and lines of same, if marked upon the ground;

(b)  By the calls for natural or artificial objects, if there be such calls;

(c)  By calls for the corners and boundaries of other surveys;

(d)  By maps and other records in the General Land Office.

Since the enactment in question, parol or extrinsic evidence throwing light upon the intention of the parties is not allowable in suits involving boundaries to alternate railway surveys but the lands must be located (a) as evidenced by the corners and lines of same, if marked upon the ground; (b) by calls for natural or artificial objects, if there be such calls; (c) by calls for the corners and boundaries of other surveys; (d) by maps and other records in the General Land Office. Course and distance calls can no longer be given controlling effect. The statute states the kind of calls that shall control.

Nowhere in the statute can there be found justification for looking to parol or extrinsic evidence to throw light upon what mistakes were made in writing the field notes nor to throw light upon what the intention of the parties to the grant was. In office surveys, the calls for senior adjoinder grants must control. Steward v. Coleman County, 95 Texas, 445, 67 S. W., 1016; Cross v. Wilkinson, 111 Texas, 311, 234 S. W., 68; Russell v. Maxwell Land Grant Co., 158 U. S., 253, 39 L. Ed., 971; 2 Pomeroy Eq. Jur., Sec. 965; Scales v. Johnson, 41 S. W., 828, 830 (Texas Civ. App.); Patterson v. Winn, 11 Wheat, 380; Ryan v. Carter, 93 U. S. (3 Otto) 78, 23 L. Ed., 807; G. H. & S. A. Ry. Co. v. The State, 77 Texas, 367, 384; Schendell v. Rogan, 94 Texas, 585, 587.

*James V. Allred,* Attorney General, *Ralph W. Yarbrough,* Assistant Attorney General, *George T. Wilson, J. P. Hill, James Cornell, Robert G. Hughes,* of San Angelo, *A. M. Gee,* of Edmond, Okla., *R. C. Gwilliam,* of Tulsa, Okla., *Hiner & Pannill, G. R. Pate, G. B. Smedley, Burney Braly,* of Fort Worth, *E. H. Yeiser, W. A. Keeling,* of Austin, *Brian Montague,* of Del Rio, *A. D. Dyess, I. S. Handy,* of Houston, and *Don Emery,* of Amarillo, for appellees.

Durrell's original field note calls for surveys in Block 194 to tie to adjoining surveys in Block Z on the West and in Block 178 on the South, all such calls being consistent with each other and with the evident intention of the surveyor, should be given effect, and Durrell's calls for adjoinder to the River Surveys

on the East being conflicting and inconsistent with the controlling calls on the West and South should be rejected.

The second method of construction submitted to the Supreme Court in the certificate of the Court of Civil Appeals, giving credit as it does to all consistent calls in the original field notes, and rejecting the inconsistent and conflicting calls, should be adopted as the correct construction of that part of Block 194 now under consideration. Revised Civil Statutes of 1879, Articles 3877, 3881, 3882, 3897, 3902, 3908 and 3909; Revised Civil Statutes of 1911, Articles 5347, 5349, 5353, 5399 and 5400; Miller v. Topeka Land Co., 44 Kan., 354; Quinnin v. Reimers, 46 Mich., 605, 10 N. W., 35; Brooks v. Stanley, 66 Neb., 826, 92 N. W., 1013; Jones v. Kimble, 19 Wis., 452; Finberg v. Gilbert, 104 Texas, 539, 141 S. W., 82; Phillips v. Ayres, 45 Texas, 601; Blackwell v. Coleman Co., 94 Texas, 216; Adams v. H. & T. C. Ry. Co., 70 Texas, 252, 7 S. W., 729; Montgomery Co. v. Angier, 32 Texas Civ. App., 451, 74 S. W., 957; Forbes v. Withers, 71 Texas, 302; Woods v. Robinson, 58 Texas, 655; Swisher v. Grumbles, 18 Texas 164; Robinson v. Doss, 53 Texas, 496; Boon v. Hunter, 62 Texas, 582; Skelton's Boundaries and Adjacent Properties, pp. 73, 89, 113, 117, 610-611 and 668; Penley v. Emmons, 102 Atl., 972; Ruth v. Carter Kelly Lumber Co., 286 S. W., 322; Booth v. Upshur, 26 Texas, 64; Baker v. Light, 80 Texas, 627; Security Land and Exploration Co. v. Burns, 193 U. S., 167; Stafford v. King, 30 Texas, 271, 94 Amer. Dec., 304; State v. Coleman-Fulton Pasture Co., 230 S. W., 850; Lyon v. Waggoner, 83 S. W., 46; Willoughby v. Long, 96 Texas, 194, 71 S. W., 545; New York Land and Cattle Co. v. Thompson, 83 Texas, 169; Sanborn v. Gunter, 84 Texas, 273, 17 S. W., 117; Brooks v. Slaughter, 232 S. W., 856, 218 S. W., 632; Stahlman v. Riordan, 227 S. W., 726; Johnson v. Knippa, 127 S. W., 905; Austin v. Espula Land and Cattle Co., 107 S. W., 1138.

*Cantey, Hanger & McMahon, Mark McMahon, Gillis A. Johnson, C. B. Collard,* of Fort Worth, *C. W. Truehart,* of San Antonio, *R. J. Randolph,* of Austin, *Jones & Lyles,* of Del Rio, as amicus curiae.

Block 194 (G. C. & S. F. Ry. Company) under the law of boundary is correctly located by putting its surveys consecutively in one system according to their interconnecting field note calls for course and distance, beginning with survey 1 of that block at the fixed and certain position of the northeast corner and east line of Block Z as established by the undisputed Perry

Hill and Canyon Corners, thence from west to east. Standefer v. Vaughan, 219 S. W., 484; Brooks v. Slaughter, 218 S. W., 632, 232 S. W., 856; McAninch v. Freeman, 69 Texas, 445; Swenson v. Willsford, 84 Texas, 424; Maddox v. Fenner, 79 Texas, 279; Herman v. McIver, 140 S. W., 798.

Other cases involving office surveys where course and distance calls have been held to prevail over mistaken calls for adjoinder are T. & P. Ry. Co. v. Thompson, 65 Texas, 186; Booth v. Upshur, 26 Texas, 64; Love v. Jones, 138 S. W., 1128; Sellman v. Sellman, 73 S. W., 48; Gilbert v. Finberg, 156 S. W., 507; Gilbert v. Harris, 109 S. W., 392; Prairie Oil & Gas Co. v. State, 229 S. W., 585; Kerr v. State, 205 S. W., 474.

MR. JUSTICE PIERSON delivered the opinion of the court.

This suit, familiarly known as the Whiteside case, was brought by the State of Texas, and involves a large area of valuable oil lands in Pecos County, Texas. As originally filed by Attorney General R. L. Bobbitt it was primarily a boundary suit, and involved 42 surveys of land in Block 194, G. C. & S. F. Ry. Co., as well as large areas of surrounding land. It was filed shortly after the judgment of the trial court for the State in the case of Douglas Oil Co. et al. v. The State of Texas, commonly called the California case, and drawn upon the boundary theory of the State in that case. By the amended petition filed by Attorney General James V. Allred, upon which the case was tried, the boundary theory was changed and the suit became an action of trespass to try title for the recovery by the State of the following numbered sections in said Block 194: 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28, 35, 37 and 38.

This amended petition omitted the eastern tier of boundary sections of Block 194 and dismissed from the case, among other defendants, Fred Turner, Jr. This left in the case two groups of defendants: one making the Yates contention that surveys in Block 194 should be given an excess west to east of 68 varas to the mile by projecting a meridian northward from the position asserted to be the southwest corner of survey 7, Block C-3, with which contention the State is in accord in this case; the other making the Douglas, Whiteside or Smith contention for an adjoinder of the lines of Block 194 with the River surveys on the east and Runnels County School Land on the north.

By cross action filed by the Douglas Oil Company against Yates, sections 31 and 33 of Block 194, lying in the eastern tier of its boundary sections, were brought into the case.

Upon trial of the case before the court without a jury, judgment was rendered that the State of Texas take nothing as to those sections sued for which had been patented, except as to the fixing of the boundaries; that the State take nothing as to those sections which had been awarded without mineral reservations; that the State recover all minerals in those sections sold with mineral reservations, subject to leases executed by the surface owners for themselves and as agents of the State, and without prejudice to the surface owners in their mineral rights under the Relinquishment Acts. The judgment then proceeds to fix the boundaries of the several sections involved in accordance with the theory advanced by the State in its Second Amended Original Petition and by the defendants constituting the Yates interests.

On the cross action of the Douglas Oil Company against I. G. Yates and I. G. and Annie Yates Estate, the Court awarded judgment for the latter on their pleas of limitations.

The Douglas Oil Company and those other defendants contending for adjoinder with the River Surveys, appealed to the Court of Civil Appeals, and since the question of the location of some of the same surveys was involved in the case of Fred Turner, Jr., v. Mrs. M. A. Smith et al., already before this Court, the Honorable Court of Civil Appeals for the Third Supreme Judicial District, after stating the four methods for locating on the ground Block 194 as contended for by the several litigants, has certified for our determination upon the whole record in the case, questions based on said methods, as follows:

"FIRST METHOD:

"This method gives effect to the adjoinder calls in field notes of Block 194 for the E. and N. lines of Block Z and for the lines of surveys in Block 12, but rejects all other adjoinder calls for senior surveys to the south, north and east of the sections in Block 194 lying east of Block Z. Under this method the boundary lines in issue are established by course and distance calls from the E. line of Block Z. This method was urged below in the California case by the State and the Turner interests, and is still contended for by the latter. It was adopted by the trial courts in the California and Smith-Turner cases.

"In this connection and in connection with the second and third methods it should be noted that the N. E. corner of Block Z is established in both cases by projection from the concededly established S. E. corner of Block Z (Perry Hill corner) and the N. E. corner of Section 33, Block Z (Canon corner). This lat-

ter corner was established by jury finding in the California case and by court finding in the Whiteside case. So located the E. line of Block Z has an excess of 30.2 varas per section. It is contended by appellees Reed et al. in the Whiteside case that Block Z was an office survey, that Canon corner was not proved an original corner, and that Block Z must be constructed by its field note calls from its established S. E. (Perry Hill) corner. The issue thus raised becomes material to each of the first three methods.

"SECOND METHOD:

"This method differs only from the first in that it does not reject the adjoinder calls in Block 194 for Block 178 or of the latter for Blocks C-3 and C-4. It does reject the adjoinder calls of Blocks 178 and 194 for Block 1, and of Block 194 for Runnels County School Land. It establishes the S. E. corner of Section 7 Block C-3 at 7 miles plus 476 varas E. of Perry Hill corner, giving each of the intervening seven tiers of sections an excess width of 68 varas over field note calls, thus establishing the S. W. corner of Section 7, Block C-3 at 1968 varas west of its S. E. corner. From the thus established S. W. corner of Section 7, Block C-3, projected north and east lines of Sections 19, 22, 23 and 28, Block 194 are established, and each of the six tiers of surveys intervening between this line and the E. line of Block Z is given an excess width over call of 68 varas. The remaining involved sections (31, 33, and 35 to 38) are established by their course and distance calls except where the latter (distance) is modified by adjoinder calls to other established sections in Block 194 (See field notes of these sections in judgment at pages 661 to 663 of the transcript in the Whiteside case). This method was contended for by the State and adopted by the trial court in the Whiteside case, and is now urged by the State in its brief in this court.

"It should be noted in this connection that the Turner interests (not parties to the Whiteside case) reject the S. E. and S. W. corners of Section 7, Block C-3 as established in that case, contending that the evidence in that regard was not developed in the Whiteside case but that in the California case the location was discredited or disproved. If this method is adopted, the issues thus presented will become material.

"THIRD METHOD:

"This method (contended for by Douglas Oil Company) gives effect to all adjoinder calls in Blocks 194 and 178 for surrounding surveys, disregarding where essential to such adjoinder, course and distance calls. This method necessitates

some equitable adjustment of the area involved among the affected sections in Blocks 194 and 178. A proposed such adjustment as to the Block 194 affected sections is presented in Douglas Oil Company's map exhibit No. 95 in the Whiteside case. Should this method be adopted the proper basis of apportioning the affected area will become material.

"FOURTH METHOD:

"This method (contended for by appellees Reed et al. in the Whiteside case and in the alternative by Douglas Oil Company) disregards all adjoinder calls in Blocks 194 and 178 for surrounding surveys, except the calls of Block 194 for Block 178, and establishes all of the survey lines in Blocks 178 and 194 by course and distance calls of intervening surveys from Pecos Springs corner. This method is exemplified in map exhibit No. 93 of Douglas Oil Company in the Whiteside case.

"For the reasons above outlined, we deem it advisable and our duty to certify for your decision the following questions:

"1. Which of the above four is the proper method to be applied in establishing the boundary lines of the involved surveys?

"2. If either of the first three is the proper method, is the N. E. corner of Block Z properly established from Canon corner?

"3. If the second is the proper method, is the S. W. corner of Section 7, Block C-3, properly established at the point fixed by the trial court in the Whiteside case; and if so did the trial court in that case adopt the proper method of fixing from that established point the boundaries of the involved surveys?

"4. If the third method is adopted, what is the proper method of establishing the boundaries of the involved surveys from the called adjoinder points and lines of surrounding surveys?"

This case was submitted to this court along with the case of Douglas Oil Company et al. v. The State of Texas, No. 6339 (*post* 377), known as the California case, and the case of Fred Turner, Jr., v. Mrs. M. A. Smith et al., No. 5395 (*ante* 338). All of the propositions raised by the certified questions in this case have been considered and disposed of in these two cases.

■ On the basis of the holdings in the two cases referred to, we answer the first question that the "First Method" is the proper method to be applied in establishing the boundary lines of the involved surveys.

■ We answer the second question is the affirmative.

The answers given to these two questions render answers to the other questions unnecessary.

In answering the certified questions in this case we have purposely avoided expressing any opinion on issues other than those in volved in the questions certified.

Mr. Chief Justice CURETON, dissenting.

In so far as the opinions of the Majority of the Court in the above case hold that there exists a vacancy between the west line of the Yates Survey and the east line of Block 194, and that the surveys in Block 194 should be construed eastward by course and distance alone, without giving effect to calls for adjoinder on the south with Block 178, I respectfully dissent.

I agree with the conclusion of the Court of Civil Appeals in the case of Smith v. Turner (*ante* 338), 13 S. W. (2d) 152, that no vacancy exists, and am of the opinion that the judgment of that Court in reversing the judgment of the District Court, and rendering a decree to the effect that the land claimed by Turner was not vacant, unsurveyed land, should be affirmed.

I am also of the opinion that the District Court in the Whiteside case (No. 6338) used the correct method in determining the eastern boundary of the sections in Block 194, and that the questions certified in both the Whiteside and California (No. 6339) Cases, which are copied in the Majority opinions, should be answer in a manner consistent with that conclusion, as follows:

1.   The answer to the First Certified Question in both the Whiteside and California Cases should be, that the *"Second Method"* described in the Certificate (quoted in the Majority Opinions) was and is the proper method to be applied in establishing the boundary lines of the involved surveys:

2.   The Second Certified Question should be answered in the affirmative;

3.   Both inquiries embraced in the Third Certified Question should be answered in the affirmative;

4.   In view of the foregoing an answer to the Fourth Certified Question is unnecessary.

My reasons for the above conclusions will be stated in formal dissenting opinions which I will file as soon as their preparation may be completed.