**DOUGLAS OIL CO. et al. v. STATE et al.**
**(CALIFORNIA CASE).**

No. 7533.

Court of Civil Appeals of Texas. Austin.

Nov. 15, 1933.

Rehearing Denied and Arguments Overruled March 7, 1934.

Jno. A. Braly, of Fort Worth, for appellant Southland Royalty Co.

John Rogers, of Tulsa, Okl., and Smith & Neill, of San Angelo, for appellants J. A. Chapman and McMan Oil & Gas Co.

Baker, Botts, Parker & Garwood, of Houston, and E. F. Smith, of Austin, for appellant Frank Pickrell.

Harris, Harris & Sedberry, of San Angelo, for appellants Peerless Oil & Gas Co., J. R. Parten, and L. R. Kershaw.

J. H. Maxey, Chas. A. Holden, Wilbur J. Holleman, and Leahy, Maxey, Macdonald & Holden, all of Tulsa, Okl., and Gibbs & Lewis, of San Angelo, for appellant Douglas Oil Co.

James V. Allred, Atty. Gen., and R. W. Yarborough, Asst. Atty. Gen., for the State.

W. B. Silliman, of Fort Stockton, Cantey, Hanger & McMahon, of Fort Worth, and C. W. Trueheart, of Longview, for appellee Bob Reid.

Thompson, Knight, Baker & Harris, of Dallas, and Turney, Burges, Culwell & Pollard, of El Paso, for appellee California Co.

McCLENDON, Chief Justice.

This suit (popularly called California Case) involves, as its controlling question, the proper location of surveys 34 and 35 in block 194, G. C. & S. F. Ry. Co., in Pecos county. As such it was companion to another case of the same style pending in this court popularly called Whiteside Case, and to the Smith-Turner Case pending in the Supreme Court. The boundary issue has been determined by the Supreme Court. 61 S.W.(2d) 807. See, also, opinions in the Whiteside Case (Tex. Sup.) 61 S.W.(2d) 804, and in the Smith-Turner Case (Tex. Sup.) 61 S.W.(2d) 792. The area involved in the instant case is the entire shaded portion in the following map, referred to hereafter as tract 1. The western strip of this shaded tract, which includes the four oil wells numbered 1, 7, 11, and 12, will be referred to as tract No. 2 (also sometimes called Fred Turner, Jr., survey No. 7); and the eastern strip will be referred to as tract No. 3 (sometimes called the Bob Reid tract):

The relative position of this land in block 194, in accordance with the Supreme Court's adjudication, which also accords with the trial court's judgment in this case, is shown in map, 61 S.W.(2d) 792, 797.

After the Supreme Court's answers to the certified questions, the case was reset for submission and oral argument in this court, our order providing: "In the meantime counsel are requested either to re-brief the case, or file further briefs or arguments, in the light of the answers of the Supreme Court to the questions certified; and eliminate such questions or issues as are determined by such answers."

J. A. Chapman and McMan Oil & Gas Company (to whom we shall refer as appellants) are the only appellants who have complied with this order. We therefore assume that the remaining appellants have reached the conclusion that the Supreme Court's adjudication requires an affirmance of the trial court's judgment—a conclusion in which we fully concur.

Appellants are fractional royalty owners under a lease held by the California Company, covering section 35, and one of the appellants owns additionally a fractional mineral title to that section subject to the California Company's lease. This is the only interest of any character that appellants have ever asserted in the subject-matter of this suit.

Section 35 was patented in 1886 without reservation of mineral. March 5, 1924, its then owners executed the above-mentioned oil and gas lease to appellee California Company, which lease covered the entire section.

Section 34 (an alternate school fund survey) was sold in 1908 with reservation of the minerals in the school fund. In 1924, its then owner, for himself and as agent of the state, executed an oil and gas lease to the California Company, covering the entire section, under the provisions of R. C. S., art. 5367 et seq., known as the Relinquishment Act.

The west line of tract No. 2 (Fred Turner, Jr., survey No. 7) is coincident with the common boundary line of sections 35 (east line) and 34 (west line) as fixed by the "First Method" (course and distance from east line of block Z, T. C. Ry. Co.) adjudicated by the Supreme Court to be the correct locative method. 61 S.W.(2d) 807. The east line of tract No. 2 is coincident with the common boundary lines of sections 34 and 35, located according to the "Second Method," which was rejected by the Supreme Court.

Upon the manifestly untenable theory of a vacancy between sections 34 and 35, Fred Turner, Jr., made application to purchase and was awarded tract No. 2.

The contentions which appellants now urge may be reduced to three and stated substantially as follows:

(1) There was no pleading to support that portion of the trial court's judgment quieting as to appellants California Company's title to its oil and gas lease on section 34.

(2) Error of the trial court in overruling (a) a plea of privilege to change the venue; (b) a motion to permit a trial amendment; and (c) a motion to require the state, Turner, and the California Company to replead; all filed after the evidence was closed and before the case went to the jury; and each predicated upon an agreement between the state, Turner, Reid, and the California Company, made after close of the evidence.

(3) Certain alleged discrepancies, inaccuracies, and inconsistencies in the locative descriptions in the trial court's judgment.

Since appellants' first two above contentions involve a construction of the pleadings, they will be considered together. The pleadings are quite voluminous, consuming the major portion of a 950-page record. In large measure they have no important bearing upon the issues which the appeal now presents. We believe the following résumé fairly states their substance in so far as pertinent to our present inquiry:

The suit (trespass to try title) filed January 5, 1929, by the state, sought to recover the mineral title to the second tract. It was also alleged that large quantities of oil had been extracted from the tract, as to which the state sought an accounting and judgment for its value. Appellants, as well as all other parties interested in the property, including royalty owners, were made parties defendant.

June 27, 1929, the state filed its first amended original petition, in which it sued for the fee-simple title to tract No. 1, with the exception of tract No. 2, as to which latter it sued only for the mineral title. It renewed its suit for an accounting and for the value of the extracted oil.

October 7, 1929, the California Company filed its first amended original answer, in which, after pleading specifically its mineral rights and titles under its leases covering sections 34 and 35, it alleged with much particularity, in substance, the following facts:

The boundaries of these sections were not marked by natural objects of any charac-

ter by which they could be located on the ground, and necessarily they had to be located by reference to known points in distant surveys. The California Company, before commencing exploration and development under its leases, expended large sums of money in endeavoring to ascertain the exact boundaries of these sections; and, in good faith and based upon the best expert advice obtainable, drilled the four wells in question in accordance with the railroad commission's orders, placing them at what it believed to be the requisite distance west of the east line of section 35, which is coincident with the east line of tract No. 2; and also drilled wells similarly situated to the east of that line, in good faith believing that the four wells first mentioned were actually upon section 35, and the wells to the east were actually upon survey 34. It spent large sums in exploration and development, and as a result large quantities of oil had been extracted from these and other wells, an exact accounting as to each had been kept; and to quote from the answer: "Defendant would further show that if the wells drilled by it on what it in good faith believed and supposed was a part of Survey 35, and being wells situated on the land described in plaintiff's petition as 106.55 acres, shall prove in law to be a part of Survey No. 34, and not part of Survey 35, as this defendant in good faith believed then such drilling of such wells as being on Survey 35 and such belief of this defendant that such wells were on or part of Survey 35, and the keeping by defendant of its record of oil produced from said wells as being on and a part of Section 35, arose through and from a mistake of fact on the part of this defendant, and if said wells shall be found to be on or a part of Survey 34, then this defendant owes to the School Fund of the State of Texas, the lawful royalty from said wells, which royalty it holds and now offers to pay to the State of Texas as a part of said School Fund. That owing to a question having arisen of whether these wells were on Survey 35 or were on Survey 34 has necessitated this defendant to impound said royalty money and hold same for the benefit of the party entitled thereto and the royalty owners of 34 and the royalty owners of 35 were promptly so notified and advised by defendant."

No specific prayer for relief was made against appellants; but it prayed that it be quieted in its title to its leases as against the plaintiff, and Fred Turner and other interveners.

October 7, 1929, appellants filed a second amended original answer, from a verified por-

tion of which we quote the following: "That neither of these defendants does now and has never had, claimed or asserted any interest whatsoever in any of said land except in and to an undivided royalty mineral interest in Section 35."

In a special answer contained in this pleading appellants "adopt as their own the special answers of their co-defendants, I. G. Yates and the California Company."

In a trial amendment, filed November 26, 1929, the state pleaded in the alternative that, if tract No. 2 was embraced within survey 34, the California Company had abandoned and relinquished its mineral interest under its lease covering section 34, setting up in detail various acts of the California Company in locating the east line of section 35, and the oil developments conducted under that location. Further in the alternative it pleaded that, if there had been no abandonment or relinquishment, then the California Company had breached the lease contract covering section 34, in that it had failed and refused to pay the royalties on the wells situated on tract No. 2.

The trial of the case was begun some time in October, 1929, and the evidence was not concluded until on or shortly before February 20, 1930. On that date, the status of the pertinent pleadings being as above outlined, an agreement was entered into between the state, Turner, Reid, and the California Company, the provisions of which having material bearing upon the instant controversy read:

"First: The State of Texas and Fred Turner, Jr., waive and abandon their claims of (a) abandonment (b) estoppel and (c) forfeiture, as said issues are plead against the California Company in their respective pleadings herein, and agree that judgment of the Court in the above styled and numbered cause may go against them as to such issues.

"Second: The Court (with the aid of the jury if such aid be deemed by the trial court appropriate and necessary) shall fix the true line between Survey 34 and Survey 35, Block 194, G. C. & S. F. Ry. Co. lands, Pecos County, Texas, which it is agreed shall be a common line between said surveys.

"In the event any one or more of wells numbered 1, 7, 11 and 12, located on the 106.55 acres of land in controversy, be adjudged by the Court to be within the lines of Survey No. 34, The California Company shall, within a reasonable time, and after motions for new trial have been overruled and the present term of court concluded, pay to the State of Texas the accumulated royalties due it from any of said oil wells adjudged by the trial court to be within Survey 34, and shall thereafter pay to the State of Texas royalties and rentals in accordance with the terms of its lease on Survey 34. The payment, however, of such rentals is to be tendered by The California Company upon the condition that the judgment of the trial court in such respect shall become a final judgment.

"Third: When said line has been fixed as may be determined by the trial court, the mineral estate of The California Company in said Survey 34 shall in all things be declared established and confirmed by judgment of said trial court accordingly as between the parties hereto."

On February 22, 1930, appellants filed a plea of privilege, seeking to change the venue of the case to Pecos county. This plea alleged execution of the agreement, and asserted that its effect was to change the nature of the case, in that under the agreement the state had no such interest in the land as to give venue in Travis county "to entertain this suit for the location of said common boundary line between said Sections 34 and 35."

On the same date, appellants filed a motion to require the parties to the agreement to file a copy thereof with the clerk, and to replead their case as remade by the agreement. This plea and motion were overruled, and appellants on February 25, 1930, filed a motion for leave to file a trial amendment predicated upon the agreement; asserting that thereby the character of the suit had been entirely changed to one exclusively of boundary; and that neither the state nor Fred Turner had such an interest in the subject-matter as would authorize maintenance of "an action for title or possession in this or any other county"; the prayer being that upon final hearing they have judgment in their favor, and the plaintiff and Fred Turner take nothing against them. This motion was also overruled.

The judgment fixed the east line of survey 35 and the west line of survey 34 at the west line of the second tract, and quieted the title of the California Company under its lease covering section 34 as to all defendants, including appellants.

The first contention above is to the effect that there was no pleading to sustain this portion of the decree in so far as concerns appellants.

It is true that there was no specific relief sought by the California Company against appellants. The first amended original answer of the California Company did very

specifically plead its title under its leases covering both sections 35 and 34, and prayed that it be quieted therein as to plaintiff, Turner, and other interveners. The above-quoted portion of that answer was a specific offer on the part of the California Company to pay to the state its royalties in case tract No. 2 should be decreed to be in survey 34. In that connection it alleged that, in view of the controversy that had arisen, it had impounded the royalties of those wells, which it was holding for the benefit of those legally entitled thereto; and that "the royalty owners of 34 and the royalty owners of 35 were promptly so notified and advised by" it. This was a part of the pleadings of the California Company which were adopted by appellants and clearly put in issue the rights of all parties to the suit to the royalties thus impounded. It was in the nature of an interpleader with a tender of payment to whomsoever entitled under final adjudication of the boundary controversy.

In view of the adoption by appellants of this pleading, and in view of their specific disclaimer of any interest whatever in any of the subject-matters of the suit other than as royalty owners in section 35, an inclusion of appellants in the judgment quieting the title of the California Company under its lease of section 34 becomes wholly immaterial. If there is any error, it is certainly a harmless one; and to sustain the contention and further prolong the litigation on that account resort must be had to extremely technical procedural grounds.

■ The plea of privilege questioning the venue manifestly came too late, unless the agreement so changed the nature of the action as to defeat venue in Travis county, and unless (if such were the effect of the agreement) appellants would still have the right to file such plea. The latter we find it unnecessary to consider.

It may be assumed that the suit was originally brought upon the theory that there was a vacancy between sections 34 and 35. The answer of the California Company asserted unequivocally that there was no such vacancy, but that the exact location of the division line was uncertain. It should also be noted that in one of their verified pleadings appellants inferentially, if not expressly, deny the existence of a vacancy, in that they allege that the "Fred Turner Survey No. 7 * * * in truth and in fact does not exist." The California Company specifically pleaded its title under both sections and made tender of the royalties of the second tract to the state in case that tract should be adjudicated to be in section 34. The state sought to avoid this pleading by asserting in the alternative to the vacancy theory that the California Company had abandoned and relinquished any rights to tract No. 2 under its lease of section 34; and, as a further alternative, that it had breached its contract of lease by not paying the royalties to the state. These several pleadings of the state and the California Company, the latter of which were adopted by appellants, clearly put in issue the right of the state to the tendered royalties, based upon the location of the common line between section 34 and section 35. The only change in the fact situation made by the contract between the state and California Company was to eliminate the issues of vacancy and of abandonment, forfeiture, and breach of the lease contract. The right of the state to the royalties still remained predicated upon the proper location of the common boundary of sections 34 and 35, which was left undisturbed by the agreement. If the state had replead its case in accordance with this agreement, it would of necessity have asserted its right to the royalties, making the California Company and the appellants parties to the suit, and predicating that right upon the assertion that tract No. 2 was in fact included within the boundaries of survey No. 34. In that event the suit would still be one the venue of which was properly laid in Travis county, because the royalties due the state were payable in Travis county, and were evidenced by a contract in writing which gave venue in that county. Reagan County Purchasing Co. v. State (Tex. Civ. App.) 65 S.W. (2d) 353. It could hardly be asserted that, if the case had been repleaded in this manner, appellants would have been entitled to a change of venue, since the California Company was entitled to be protected against having to pay the same royalties to two different claimants.

■■ Nor is there any merit in the contention that appellants should have been permitted to file a trial amendment. In their brief they say: "Had The California in its case pleaded that the west line of Survey 34 was west of these four wells, this Honorable Court cannot indulge the presumption that these appellants could not have introduced proof sufficient to prevent that issue being determined against them; nor can this Honorable Court say as a matter of law that instead of The California Company's now recovering against these appellants on a phantom cross action, they would not have recov-

ered against The California Company upon a pleaded cross action." The California Company has never contended that section 34 included the second tract; nor did the agreement purport to locate the common line between sections 34 and 35. On the contrary, it expressly provided for a judicial determination of that question. Appellants' pleadings throughout, some of which are verified, as well as their briefs, assert unequivocally that they were interested alone in royalties under the California Company's lease covering section 35. The only issue which the case presented or could present as to them, therefore, was the proper location of the east line of section 35. It was immaterial, so far as concerned their interests, whether that line was a common boundary line with section 34, or whether unappropriated public domain intervened. Every pleading necessary to put in issue the rights of appellants after as well as before the execution of the agreement was on file and available to them. No theory is advanced by appellants under which they have lost any right by virtue of that agreement which they would have had in its absence. The trial of this case consumed several months. Every scrap of evidence discoverable by able counsel and expert research, having any bearing whatever upon the controlling issue in the case (the proper location of the east line of section 35) had been introduced in evidence. If it be true, as appellants allege, that the California Company by virtue of this agreement ceased to have a substantial pecuniary interest in the boundary question, nevertheless, that issue still remained in the case, and the California Company was interested to the extent of having it judicially determined, in order that it might pay the royalties under its leases to those legally entitled thereto. There was no obligation on the part of the California Company to defend the interests of appellants in the boundary question. They were in court representing themselves; and had every opportunity, both in the court below, in this court, and in the Supreme Court, to present by pleading and by evidence every contention or theory that would fix or tend towards fixing the east line of survey 35 at the point where the California Company supposed and they contended it to be. Their rights in this regard were in no wise impaired or jeopardized by the agreement; and no interest of theirs was adversely affected by the refusal of the trial court to require its filing; or to require the state, Turner, and California Company to replead in accordance with the agreement; or to permit the appellants to file a trial amendment. The right of review by appeal is limited to errors which are prejudicial. And the burden, at least prima facie, of showing prejudice, is on appellant. The record not only does not show, but negatives, the existence of prejudice.

It may not be amiss in connection with appellants' first two contentions to note the following incidents in the history of this case on appeal:

The record was filed in this court on June 19, 1930, and the case was set for submission in its regular order on the docket on April 8, 1931. On February 27, 1931, the state filed a motion to postpone the submission indefinitely on the ground that the Smith-Turner Case was then pending in the Supreme Court, and a decision in that case would likely determine in large measure the state's interest in this case, "so that it will be to the advantage of the State and of all the parties concerned to have the submission of this case await the decision of the Supreme Court in that case." All parties to the appeal were notified of this motion, and no objection was urged. The motion was granted on March 25, 1931. When the appeal in the Whiteside Case reached this court, it was advanced upon motion of the state; and in the oral argument on July 27, 1932, the court's notice was directed to the fact that it was companion, as to the boundary issue, to this case. This court, thereupon, of its own motion, set this case for submission on October 5, 1932. In the meantime, upon the urgent solicitation of some of the counsel in the case, this court consented to certify the boundary question to the Supreme Court. However, upon careful examination of the briefs of the several parties, it became evident that a certificate made in strict compliance with the rules would probably foreclose some of the factual contentions presented. We quote in this connection from the certificate: "In view of the holding in Porter v. State (Tex. Civ. App.) 15 S.W.(2d) 191 (error refused), and Blaffer v. State (Tex. Civ. App.) 31 S.W.(2d) 172, (error refused), that under the doctrine of stare decisis the binding effect of a final adjudication of the Supreme Court establishing a boundary line is not limited to those party and privy to the litigation, we deem it most important that all of the parties to all of these cases be accorded the right to a hearing in the Supreme Court before final adjudication in the Smith-Turner Case. These considerations have moved us to yield to a request of counsel for some of the parties in the Whiteside and California Cases to certify to Your Honors the issues involved

458

in this boundary dispute. Under these exceptional circumstances and with the stated objective, it will not be practicable to make the certificates complete in themselves so as to preclude examination of the record; since to do so would impose limitations upon the parties in presenting their several views, constructions, and interpretations of the record as applied to the ultimate issues to be decided. Certificates so limited would leave open for subsequent review by writ of error questions involving interpretation of the certificates' statements of the records; and to that extent the purpose of certifying would be defeated. We are, therefore, transmitting with the certificates the entire record in each case."

It will, therefore, be observed that, in so far as the boundary issue in the two cases was concerned, this court made no fact findings, but certified the questions determinative of those issues, based upon the entire record in each case.

The manifest purpose of certifying was to set at rest the boundary issue as to all parties in both cases; and it can now hardly be seriously questioned that this effect must be given to the answers of the Supreme Court.

■ Aside from this, under the holdings in the Porter and Blaffer Cases, appellants would be bound by the boundary adjudication of the Supreme Court in the Smith-Turner and Whiteside Cases, under the application of the doctrine of stare decisis, regardless of whether the boundary issue had ever been litigated in a case to which appellants were parties. In other words, if the trial court's judgment in this case were reversed and the case dismissed, as appellants now urge, the Supreme Court's holdings in the Smith-Turner and Whiteside Cases could be set up as conclusive of the boundary issue in any subsequent litigation brought by any of the parties to this appeal, having for its purpose or in any way involving that issue. There is, therefore, nothing further to litigate in so far as the proper location of the east line of section 35 is concerned, which issue alone determines every claim or right which the appellants now or have ever asserted in the subject-matter of this suit according to their own sworn pleadings. To reverse the trial court's judgment upon some point of practice, and thus permit a retrial of issues already finally determined by the Supreme Court, could not be justified upon any theory which would commend itself to one seriously concerned in a proper administration of justice. Aside from the mere interest of the particular litigants, the state is vitally interested in the economic functioning of the courts, since the expense of litigation in large measure is paid from revenues of the state. It is one of the most important functions of government to provide tribunals to adjudicate the contested rights of litigants. Every reasonable means should be afforded to the litigant to have those rights fairly, impartially, and adequately heard and determined. But where no substantial interest of a litigant is longer involved, and to prolong the controversy would serve no useful purpose, to so prolong it in the interest alone of some rule of procedure, thereby consuming the time of the courts and incurring the incidental but needless expense, would be a perversion of the proper functions of the courts as instrumentalities for the administration of justice.

■ Preliminary to consideration of appellants' third contention, the following should be noted:

The south line of section 35, as fixed by the trial court's judgment and the Supreme Court's adjudication, is 9657 varas north of the southeast (Perry Hill) corner of block Z. The south line of survey 34½ is well marked on the ground. An agreement, signed by all the parties, fixes the point on that line which is intersected by the east line of section 34 as located by course and distance from the east line of block Z, at 11,357 varas north of the southeast corner of block Z, or 1,700 varas north of the south line of section 35. The field note calls in the judgment place the south line of section 35 at 1,700.2 varas south of the above point in the south line of survey 34½. The course of the south line of survey 34½ is south 89 degrees 38' east, which throws that line 1,712.9 varas north of the south line of section 35, at the point of intersection of that section's east line with 34½'s south line. The second jury finding gives the distance between the northwest corner of survey 62, block 1, and the east line of block Z, as 14,016 varas. This distance applied to the field notes in the judgment locates on the ground the common boundary line between sections 34 and 35 in the exact position in which it is located by course and distance calls from the east line of block Z. The field note calls in the judgment place the northerly south line of section 34 at 229.2 varas north of its southerly south line and the south line of section 35. The field note calls of survey 34 as made by the original surveyor Durrell and as resurveyed by Williams in 1887 give this distance as 292 varas. This discrepancy, as explain-

ed in the judgment, arises from the fact that the field notes of the west line of sections 32 and 33 do not call for the eastern corners of sections 23 and 28; and therefore sections 32 and 33 were not given the 31.4 varas per section excess allowed to sections bordering on the east line of block Z. This discrepancy only affects the common boundary line between sections 33 and 34. It has no bearing upon any rights of appellants, whose interests are confined to section 35; and no one interested in the location of the boundary between sections 34 and 33 is complaining of the judgment.

The first point which appellants make with reference to the manner in which the judgment locates the involved land is that the mineral title to tract No. 1 is placed in section 34; whereas the surface title is left in section 35. This proposition is arrived at by the following course of reasoning: The state, the only party suing for the surface title of 34, was adjudged to take nothing in that regard. The California Company was awarded the mineral title to section 34, subject to the state's reversionary interest. Fred Turner, Jr., recovered nothing, and Yates, the surface owner of section 34, made no claim to tract No. 2. The effect of the judgment, therefore, was to leave the title to the surface of tract No. 2 remaining in Mrs. Smith, the owner of survey 35; and to put the mineral title to tract No. 2 in the California Company under its lease covering section 34.

There are two complete answers to this contention: The first is that there is no express adjudication of the surface title to survey 34, or the portion of it embraced within tract No. 2. The location of the west line of survey 34 is fixed by the judgment by course and distance calls from the east line of block Z, which accords with the adjudication of the Supreme Court in this case, the Whiteside and Smith-Turner Cases. That adjudication is binding upon the surface owners of sections 34 and 35. Under no sound course of reasoning can it be deduced that the judgment fixes or attempts to fix the boundaries of the surface title to section 35 other than as coincident with the boundaries of the mineral title to that section. In the second place, appellants have no interest whatever in the ownership of either the surface or the mineral title to tract No. 2, since both by the judgment in this case and the adjudication of the Supreme Court that tract is east of section 35, which alone concerns appellants.

Appellants' second point is that the judg-

ment conflicts with itself, in that it places the north line of section 34 "differently from where the judgment locates it in another place." This is predicated upon an alleged difference between the field note calls in that portion of the judgment by which the state takes nothing, and in that portion of the judgment quieting the section 34 mineral lease title of the California Company. There is no discrepancy in fact. The north line of survey 34 is placed in the latter field notes at 1838 varas north of the south line of section 35, which is the correct distance. The north line of the "Take-Nothing" tract does not extend to the north line of section 34, but only to the south line of survey 34½, which is a junior survey, and is in partial conflict with section 34. The "Take-Nothing" field note calls place the south line of 34½ at its intersection with the east line of 34, 1,700.2 varas north of the south line of section 35; and 1,712.9 varas north of the south line of 35 at the intersection of the west line of 34 with the south line of 34½. The beginning point of the "Take-Nothing" field notes is at the point of intersection of the east line of section 34 with the south line of survey 34½. The beginning point in the California Company's cross-action decree is 50 varas south of that point. However, the field notes in that portion of the decree do not give any distance calls for the east line of 34, but do give the proper distance call for its west line, which is 1,838 varas, and ties that line to the south line of 35. There is, therefore, no discrepancy in the judgment of which appellants can complain. The boundaries of 35, in which alone they are interested, are not in any way affected by the judgment other than as the judgment accords with the Supreme Court's adjudication.

Appellants' third point is that the judgment locates the field notes of 34 in accordance with the Williams field notes, which is in conflict with the Supreme Court's adjudication in the Smith-Turner Case. The original field notes of Durrell call for an adjoinder with the river surveys (block No. 1) on the east, and on their face give section 34 an excess of 71.77 varas, the area of an L extension in its northeast corner. The Durrell adjoinder calls for block 1 were rejected by the land office, and a resurvey was made by Williams, who eliminated the excess by cutting off the L extension. This reduced the north line from the Durrell call of 2,726.5 varas to 2,285.5. This and the adjoinder calls for block 1 are the only differences between the Durrell and the Williams field notes of

section 34. Neither calls for any natural objects or for any surrounding surveys, except those noted and eliminated by the land office and those for other sections in block 194. Manifestly, appellants have no interest in the reduction of acreage in section 34 to its proper quota under the Williams field notes. The contention that the judgment recital, that the Williams field notes control, locates section 34 differently from the Supreme Court's adjudication, is predicated upon testimony of Williams with reference to the manner in which he did his work. At one place in his testimony he refers to having run a line from some point in block C–3 up to a corner of survey 33, block 194. There is nothing in the judgment or in the Williams field notes to indicate that Williams placed section 34 on the ground differently from where the judgment locates it on the ground. The reference in the judgment to the Williams field notes was manifestly for the purpose of explaining elimination of the excess in area and the adjoinder calls for block 1 in the Durrell field notes. The judgment expressly decrees that section 34 is properly located by corners and distance from the east line of block Z. The field note calls in the judgment for the marked south line of survey 34½ place the east line of section 35 exactly where it is placed by the Supreme Court's adjudication. It is certainly going far afield in an endeavor to find conflicting provisions in the judgment itself to resort to evidence buried in a 1,500-page statement of facts with 2,000 additional pages of exhibits. No conflict whatever appears on the face of the judgment itself, and to create such conflict would require, not only an examination of the statement of facts, but a construction of the wording of the judgment which is manifestly not in accord with the intention of the trial court, but in direct conflict with that court's express holding and adjudication.

The trial court's judgment is affirmed.

Affirmed.

On Motions for Rehearing by J. A. Chapman and McMan Oil & Gas Company, and by Southland Royalty Company; and on Written Arguments upon Rehearing by Frank T. Pickrell et al.

■ Motions for rehearing have been filed by J. A. Chapman and McMan Oil & Gas Company, and by Southland Royalty Company; and two written arguments have been filed by appellants Frank T. Pickrell et al. These we will consider in the inverse order named.

The written arguments do not seek to reopen the boundary question; but to reverse the judgment only as between said appellants and the California Company; or, in the alternative, to modify the trial court's judgment to the extent that it may not hereafter be urged as res adjudicata between them and the California Company as regards their respective rights based upon an asserted agreed boundary line between sections 34 and 35 independently of the true location of such line.

In substance, it is contended that the only interest the state had in the litigation was the overriding $\frac{1}{16}$ royalty interest in section 34; that, as between said appellants on the one hand and California Company and Yates on the other, there was a binding agreement as to the boundary; that the California Company, being the lessee of said appellants and put in possession of the disputed strip by appellants under such attornment, was in duty bound to defend said appellants' title thereto; that the law will not permit them to repudiate said title; that the agreement between the California Company, on the one hand, and the state and others on the other, after the close of the testimony in the trial court whereby the issue of vacancy and the issues in the alternative pleadings of the state of repudiation and breach of lease contract covering section 34 were eliminated, constituted such repudiation and violation of the California Company's obligation to defend said appellants' title; that they were relying upon the California Company to defend their title; that, after the trial had proceeded for four months, they were told by counsel for the California Company that a settlement had been made by which the boundary between sections 34 and 35 would be fixed; that at first they were not permitted to see the agreement, but after a time were shown a copy of it, but were not permitted to take a copy away, and were even required to read it in the presence of counsel for the California Company; that their several motions referred to in our original opinion were filed under these circumstances; that they knew little about the details of the case, because they had stood by four months and permitted the California Company to conduct the defense, and were little prepared to protect themselves. It is further contended that the effect of the agreement between the California Company and the state "was nothing more than a fixation of this line as the State contended so as to throw this disputed strip into section 34." We quote from one of the written arguments: "It (California Company) owed us heavy obligations. It had assumed the defense and de-

manded and enforced the right to conduct the case. We had put it in possession within the agreed boundaries and to trade us out secretly and surrender part of the land to others was a breach of its duties to us."

We have again carefully reviewed the pertinent portions of the record in the light of these arguments, and are unable to reach a conclusion other than that expressed in our original opinion.

The complaining appellants filed their own pleadings and were represented by their own counsel in the trial court. We find no intimation in any of these pleadings to the effect that, if the east boundary line of section 35 was properly located by course and distance from the east line of block Z, as contended for by the state, thus throwing the disputed area in section 34, complaining appellants were nevertheless, as between them and the California Company, entitled by virtue of an agreement between them and the California Company and Yates to have this boundary placed so as to include the Fred Turner No. 7 area.

The statement that the effect of the agreement between the California Company and the state and others was nothing more than a fixation of the disputed line so as to throw the disputed strip into section 34 is not correct.

We have quoted in our original opinion the pertinent portions of the agreement (a photostatic copy of which we have considered as though it were properly a part of the record), and, as there pointed out, the location of this line not only was not fixed by the agreement, but was left to be adjudicated by the court. We are unable to construe the record before us as imposing any obligation upon the California Company to represent the interests of their codefendants claiming under section 35, to the extent, in any event, of jeopardizing their rights under their section 34 lease. The California Company was the lessee, not only of the complaining appellants under section 35, but of the state of Texas under section 34. The circumstances under which it drilled wells in the disputed area, as detailed in its pleadings, are stated substantially in our original opinion. These pleadings, as we have heretofore pointed out, were expressly adopted by some, if not all, of the appellants. But whether or not adopted by all, they stood unchallenged in the record in so far as any of the appellants are concerned. The California Company was claiming the disputed strip under its lease of section 35. If that claim was denied, it had a right to claim the disputed strip under its section 34 lease, which manifestly it was entitled to unless the state should successfully maintain the vacancy theory; or unless the state should under one or both of its alternative pleas defeat the section 34 leasehold interest under the theory either of repudiation or lease breach. We are unable to find any just basis for the assertion that the California Company was not acting fully within its legal rights in making whatever character of compromise, settlement, or adjustment it might deem advantageous of the vacancy, repudiation, and breach of lease issues which were thrown into the case by the state, which were solely contingent upon establishing the east line of section 35 so as to exclude the disputed area, and which, therefore, in so far as concerned complaining appellants, in no way involved their interests, since these issues could only come into play by excluding the disputed area from section 35. In which event, under appellants' own admissions in their pleadings, the disputed area was the property of others in which they had no interest. Had there been no agreement, the result must necessarily have been the same under the pleadings of the parties as they existed at the time the agreement was made, and upon which they went to trial. Had the state succeeded in establishing the claimed vacancy, or in canceling as to the disputed strip the California Company's section 34 lease, either on the theory of repudiation or breach of lease contract, the judgment must still have been the same in so far as appellants were concerned. However, the California Company would in that event, not only have lost its interest in the disputed strip under its section 35 lease, but would have also lost it under its section 34 lease; the latter not, however, to appellants, but to the state and other interested parties.

A mere statement of this situation, it seems to us, affords complete justification on the part of the California Company for buying its peace with the state and Turner on the issues of vacancy, repudiation, and breach of lease contract.

The invoked elementary principle of landlord and tenant law clearly we think has no application to the case at bar. Both the landlord and the tenant (if such be the true relation between complaining appellants and the California Company) were in court upon the suit of an adverse claimant. The question at issue was not merely the possession of the disputed area, but the title thereto. There was no more obligation on the part of the tenant to defend the landlord's title than

there was on the part of the landlord to defend the tenant's title, in so far as that obligation can be deduced alone from the relation of landlord and tenant. If such obligation on the part of the California Company existed at all, it must be by virtue of some special arrangement, agreement, or course of dealing not evidenced by the record in this case. As shown above, appellants assert that the California Company "had assumed the defense and demanded and enforced the right to conduct the case." If this is a correct statement of fact, and if the agreement made with the state et al. amounted to repudiation of that agreement, then appellants either were required upon the repudiation being brought home to them to assume their own defense and set up whatever rights they might have, and, but for such agreement or arrangement, they would have been required to plead against the California Company; or, if under the circumstances they were excused from setting up such rights, they still have them, and may assert them in an independent action. In so far as the present record shows, no such rights existed independently of the relation of landlord and tenant; and, if the duty under the circumstances devolved upon complaining appellants to then assert such rights and plead over against the California Company, they themselves have failed in that duty. A further review of the record discloses that we have accurately described the motions which appellants predicated upon the agreement between California Company and the state et al. We also direct attention in this regard to the motion of appellants, filed on February 25, 1930, asking leave to file a trial amendment predicated upon that agreement, from which we quote: "That these defendants have and claim no interest whatever in said section 34, but have, hold and claim interest in the surface and/or oil, gas and minerals in said section 35."

We are, of course, only passing upon the legal rights of the parties as presented by the record before us. The merits of appellants' complaints as to matters dehors the record are not here involved.

■ This brings us to a consideration of that portion of complaining appellants' request that, if the judgment be not reversed, some expression be written in the opinion showing that its affirmance was without prejudice to their rights to litigate their claims against the California Company. As we pointed out in the original opinion, there is no express pleading on the part of the California Company for affirmative relief by way of removing cloud from title or otherwise against any of the appellants. It prayed that it be quieted in its title to its lease as against the plaintiff and Fred Turner and other interveners. That portion of the trial court's judgment quieting the title of the California Company to its section 34 as against appellants is not supported by any pleading. See Tex. Power Corp. v. Kuehler (Tex. Com. App.) 52 S.W.(2d) 76. We declined to disturb the judgment in this regard, because, as we thought then and think now, this portion of the judgment, if technically erroneous, is harmless, because under the record made appellants had by their own admissions negated any right to the disputed area, provided it was not included in section 35. The judgment, therefore, in this respect we held to be harmless, if erroneous.

In view of the fact that complaining appellants now assert the right to litigate in another suit as between themselves and the California Company an asserted interest in the disputed area, we think this portion of the trial court's judgment should be expunged so as to make the judgment conform strictly to the pleadings. In so doing, however, we express no opinion as to the effect of the judgment as thus modified; the duty vel non of appellants to have asserted in the trial court their rights against the California Company; the effect of their failure to do so; or their right hereafter to bring an independent suit against the California Company. We merely hold that this particular portion of the judgment is in excess of the pleadings. Otherwise the judgment is correct in form as well as in substance under the record before us, and no valid ground for otherwise modifying it or setting it aside is shown. Absent which it is our duty to affirm it.

The motion of Southland Royalty Company assigns error upon that portion of our opinion to the effect that, as to appellants who did not comply with our request to file further briefs or arguments in the light of the answers of the Supreme Court to the questions certified, we assumed that they had reached the conclusion that the Supreme Court's adjudication required an affirmance of the trial court's judgment. It is urged in this connection that this court is given no power, either by statute or rule of court, to require additional briefs where a brief has already been filed.

■■ We have no doubt of the power of the Courts of Civil Appeals to require a rebriefing of a case, where, under the briefs filed, the court deem that the case is not properly presented. This power is expressly

granted in rule 53 prescribed by the Supreme Court for the government of such courts. However, in the absence of express statute or rule, we think the authority to require a proper and orderly presentation of a case is one which is either inherent or implied in the general powers and functions of a court. The order in question, however, was not in form made compulsory, nor was it intended so to be. It was in form a request, which under the circumstances was, not only not unreasonable, we think, but peculiarly appropriate. The controlling issue in the case, the one to which the original briefs in the main were directed, and the one which necessitated the major portion of an unusually voluminous record and statement of facts, had already been adjudicated by the Supreme Court on certified question; and clearly it would have been reasonable and proper, we think, not only to request, but even to require, counsel to at least point out those portions of their briefs which still presented controverted issues for review.

We have carefully examined and considered the motion, and find that it presents the same questions that are presented in the motion of Chapman and McMan Oil & Gas Company; and it will be overruled, except in so far as we are herein modifying the trial court's judgment and our original opinion.

From the motion of J. A. Chapman and McMan Oil & Gas Company, we read:

"At page 17 of the typewritten copy of this Court's opinion in this case it makes the following statement:

"'The north line of the "take nothing" tract does not extend to the north line of section 34, but only to the south line of Survey 34½, which is a junior survey, and is in partial conflict with section 34.'

"Survey 34½ is in no sense a part of the subject matter of this law suit. The location of its correct south boundary line on the ground will hereafter be the subject of a great deal of litigation as the result of decisions in the case of Turner v. Smith (Tex. Sup.) 61 S.W.(2d) 792, The Whitesides Case (Tex. Sup.) 61 S.W.(2d) 804, as well as this Court's opinion in this case. Pleas of limitation and estoppel to retain that south line as now marked on the ground as this court has itself so said and found by its opinion by saying 'The South line of Survey 34½ is well marked on the ground' will be hereafter urged and we think successfully so to retain that south line regardless of the manner of the location of the Surveys in Block 194, as heretofore laid down.

"We therefore respectfully and earnestly request this court to omit from the above quoted portion of its opinion the words, 'Which is a junior survey, and is in partial conflict with section 34.' In other words, we ask this court to now let its opinion with reference to the above set out sentence hereafter read as follows:

"'The north line of the "take nothing" tract does not extend to the north line of section 34, but only to the south line of Survey 34½.'

"The additional clause made by this court that 'which is a junior survey and is in partial conflict with section 34' is in no wise a necessary statement to the determination of this case, and the result that has been by this court reached in this case. We therefore now ask this court to leave open for future determination upon the facts as presented in a litigation brought and prosecuted for that express purpose, the right of the actual determination of the south line of 34½ and the question of its possible conflict with section 34, and not now bind these appellants with what may hereafter be said to be another 'stare decisis' of the south line of survey 34½."

It is correct, as stated, that the true location of the south boundary line of survey 34½ was not in issue, and it was not our purpose to make any statement that would adjudicate it. The quoted portion of our original opinion with reference to this south line was made solely in connection with our holding that there was no conflict in the different portions of the trial court's judgment with reference to the location of the north line of section 34. That there was a marked line on the northern boundary of the tract described in the "Take-Nothing" portion of the judgment is without dispute. That this marked line is south of the north line of sections 34 and 35 as fixed in the trial court's judgment is also without dispute. The relative position of these two lines is clearly deducible from the judgment which presents no conflict as we have heretofore demonstrated.

We direct attention in this connection to the opinion of the Supreme Court in this case on certified questions, from which we read: "The Yates survey 34½, the Fred Turner, Jr., survey No. 1, and survey No. 61 in block 1 are all definitely fixed upon the ground, thus leaving in dispute as the principal question in the case the true location of survey 34, block 194, which is included in the area described, and also incidentally sur-

464

veys 33, 35, and 28 in block 194." 61 S.W.(2d) 807.

As requested in the motion, we modify the quoted language of the original opinion so as to delete therefrom the words, "which is a junior survey, and is in partial conflict with section 34."

Except in so far as the trial court's judgment and our opinion are modified in the particulars above noted, the motions and arguments are overruled.

Judgment and original opinion modified; otherwise motions and arguments overruled.