## STATE v. OHIO OIL CO. et al.
### No. 9356.

Court of Civil Appeals of Texas. Austin, June 9, 1943.

Rehearing Denied July 7, 1943.

Gerald C. Mann, Atty. Gen., Will R. Wilson, Jr., Asst. Atty. Gen., Glenn R. Lewis, Asst. Atty. Gen., and Cecil C. Rotsch, Asst. Atty. Gen., Charles W. Trueheart, of San Antonio, J. B. Dibrell, Jr., of Coleman, and Robert G. Hughes, of San Angelo, Special Counsel, for the State.

Myron A. Smith, of Fort Worth, for appellee Southland Royalty Co.

George T. Wilson, of San Angelo, and Ira P. Hildebrand, of Austin, for appellees Yates Heirs.

Clayton L. Orn, of Houston, John W. Stayton, of Austin, and Wm. Pannill, of Fort Worth, for appellee Ohio Oil Co.

Wm. Pannill, of Fort Worth, and Black, Graves & Stayton, of Austin, for appellees Peerless Oil & Gas Co. et al.

BLAIR, Justice.

This is a vacancy suit involving seven separate tracts of land in Pecos County, Texas. The State instituted the suit in

trespass to try title against three groups of defendants, the Yates group, the Ohio Oil Company group, and the Southland Royalty Company group, appellees herein, to recover the seven tracts for the permanent school fund as vacant, unpatented land. The petition described each tract, and each tract is delineated and described on the map of Sylvan Sanders, a licensed state surveyor, as tracts Nos. 1, 2, 3, 4, 8, 9 and 10, depicted in black on the map. This map is not a State approved map but was of the seven tracts of land sued for. For a better understanding of their claimed location and of the surrounding surveys reference is here made to the maps appearing in the cases of Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792, 797; Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 551, 101 S.W.2d 801, 104 S.W.2d 1; and Pandem Oil Corp. v. Goodrich, Tex.Civ.App., 29 S.W.2d 877, 879; which maps do not show or indicate that either of the seven tracts sued for is vacant land.

I, SYLVAN SANDERS, LICENSED STATE LAND SURVEYOR, DO HEREBY CERTIFY THAT THIS SKETCH IS TRUE AND CORRECT.

LICENSED STATE LAND SURVEYOR

prepared under the direction of and introduced by the State for the purpose of showing its claimed location on the ground At the conclusion of the State's evidence the trial court sustained the several motions of appellees for an instructed verdict

and rendered judgment denying it a recovery of either of the seven tracts of land sued for, upon the grounds (1) of "no vacancy" shown as to either tract; (2) of res adjudicata; (3) of judicial estoppel; (4) of equitable estoppel; and (5) of stare decisis.

The cases, judgments and decisions relied upon to establish the last four grounds for denying the State a recovery are: Turner v. Smith (Turner case), 122 Tex. 338, 61 S.W.2d 792; Douglas Oil Co. v. State (California case), 122 Tex. 377, 61 S.W.2d 807; State v. Mid-Kansas (Mid-Kansas case), judgment of the district court not appealed from; Douglas Oil Co. v. State (Whiteside case) 122 Tex. 369, 61 S.W.2d 804; Stanolind Oil & Gas Co. v. State (first Stanolind case), 129 Tex. 547, 101 S.W.2d 801, 104 S.W.2d 1; Stanolind Oil & Gas Co. v. State (second Stanolind case), 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569; and State v. Yates, Tex.Civ. App., 162 S.W.2d 747, writ refused. Appellees also cite the cases of Eppenauer v. Ohio Oil Co. (Compton v. Ohio Oil Co.), 5 Cir., 98 F.2d 524; Eppenauer v. Ohio Oil Co., 5 Cir., 128 F.2d 363; certiorari denied in first two cases, 306 U.S. 632, 59 S.Ct. 461, 462, 83 L.Ed. 1034; which decisions involved the question of whether the same seven tracts of land sued for by the State in the instant case were vacant, unpatented public free school land; the circuit court holding that the same vacancies here claimed did not exist, and that by the judgments in the Turner, California, and the Mid-Kansas cases, supra, the lines and corners of all surveys involved in the instant case have been fixed on the ground, adjoining each other as called for in the field notes, and that tracts Nos. 1, 2, 3, 4, 8, 9 and 10 were not vacant land; that tracts Nos. 1, 2, 3 and 4 were a part of Surveys 61, 62 and 63, in block 1; that tract No. 10 was a part of the Yates 34½ survey; that tract No. 8 was a part of sec. 33, block 194; and that tract No. 9 was a part of sec. 32, block 194.

The State of Texas was not a party to these suits in the federal court. Appellees contend, however, that "while these judgments are not binding on the State as res adjudicata, yet the decisions in said cases constitute valuable, and we believe controlling, precedent upon the same issues," and being "the conclusion of the eminent judges participating in the decisions referred to must carry great weight, and as legal precedence are not only highly persuasive, but demonstrate the correctness of the judgment in this suit."

The State presents two points or contentions, as follows:

1. That the court erred in instructing a verdict on the ground of "no vacancy" shown as to either of the seven tracts of land, because its evidence raised a fact or jury issue as to whether a vacancy existed as to each of the seven tracts of land sued for.

2. That the court erred in sustaining the several pleas of res adjudicata, judicial estoppel, equitable estoppel, or stare decisis with respect to each of the seven tracts of land sued for.

The State's evidence did not show either of tracts Nos. 1 to 4 as depicted on Sanders' map to be vacant land. They will be first discussed from the standpoint of the insufficiency of the evidence, apart from any consideration of the aforementioned judgments involving the several surveys in suit.

As depicted on his map, Sanders shows tract No. 1 to lie west of survey 63; tract No. 2 to lie north of survey 63; tract No. 3 to lie north of survey 62; and tract No. 4 to lie south of survey 61, which are a part of the system of river surveys made by Jacob Kuechler in 1876. The State sought to recover each of these four tracts of land as a vacancy existing between Kuechler's senior survey lines as reconstructed by surveyor Sanders and the junior Dod monuments as marked on the ground under his construction of Kuechler's lines when he surveyed and laid in (between 1916 and 1921) the two school files of I. G. Yates, being shown on Sanders' map as I. G. Yates S.F. 12341, a survey of 2,486 acres of land lying between Block 1 or river surveys on the east and Durrell's Blocks 178 and 194 on the west; and the I. G. Yates Survey 34½ of 1107 acres of land lying between Block 1 or river surveys on the east and block 194, T.C.R. surveys 101 to 104, and Runnels County School Land Survey No. 3 on the west and north, which surveys are shown on the maps in the Turner and the first Stanolind cases; and which surveys, the surveyor who made them, and the manner in which they were made are fully set out in the Turner, California, Whiteside, and first and second Stanolind cases.

Kuechler's field notes, excerpts from his field books A and B, and portions of Dod's

reports and field notes were introduced in evidence as bearing upon the construction which surveyor and witness Sanders placed upon them in reconstructing the River surveys from the north line of 545 to the south line of 61, and his map herein inserted shows how he applied his findings to the ground, and as establishing the claimed vacancies Nos. 1 to 4. Kuechler's field notes and books merely disclose that he made the River surveys as a system of surveys by running a traverse line for a long distance on the west bank and generally parallel with the Pecos River, beginning at Pontoon Bridge, a point many miles north of the area here involved, and running south along the west bank of the river to the neighborhood of Sheffield, a point many miles south of the area involved, from which direction his field notes were constructed numerically and in sequence of calls. He did not run out or mark on the ground the north, west or south lines of these River surveys, but simply located them by protraction or office survey with reference to the points established by him on or near the river as marked directly or by reference to the northeast and southeast corners of his surveys; and gave the length of the north, south and west lines so as to make the quantity of 640 acres of land called for in each survey. The Red Barn corner, as depicted on Sanders' map, marking the northeast corner of 60 and the southeast corner of 61, is the only Kuechler corner which has ever been definitely located on the ground from said corner north to 70.

In reconstructing Kuechler's work Sanders claimed to have found a "small hill" or a "small round hill" in the north line of 545, referred to in Kuechler's field notes and field books as being 750 varas from the river. Sanders found his hill at 675 varas from the river. He found as had been definitely located on the ground the southeast corner of 61 at the Red Barn corner. The location of the north line of 545 is the only Kuechler point Sanders claimed to have located between there and the south line of 61. As so located Sanders found an excess of 28 varas per survey between the north line of 545 and the southeast corner of 61, which excess he added to the 950 varas called for in Kuechler's field notes, and thereby gave the west or back line of 61, 62 and 63 each a length of 978 varas, and it was in this manner that Sanders reconstructed these river surveys as depicted on his map.

Dod began his surveying and construction of Kuechler's river surveys under the direction of the Land Commissioner some 25 years prior to the time this suit was filed. By his ground work Dod marked both the northwest and southwest corners of all of what he found to be these river surveys, except northwest 59 and southwest 63. Each of these corners is well marked on the ground and calls for two or more bearings, thereby rendering his rock mounds as called for in his field notes of 34½ and S.F. 12341 as certain as anything can be found on the ground. As a matter of ground facts, however, instead of north and south distances of each of surveys 61, 62 and 63 being the prorated 993 varas as reported by Dod and shown in his field notes, the actual measure distances, according to Sanders' map (Ex. 109), between Dod's monuments give the west line of 61 as 996.5 varas; the west line of 62 as 1,003 varas; and the west line of 63 as 1008.8 varas. Dod's corrected field notes for S.F. 12341 call to begin at his marked corner of S.W. 61; for surveys 33, 32, 31 and 30 in block 194; and his concluding call is for his monumented corners of S.W. 60 and N.W. 60 with monument bearings, thence west to the place of beginning. These field notes were approved and the patent issued thereon to I. G. Yates in 1927. In the same year a patent was also issued to I. G. Yates for survey 34½, based upon Dod's field notes for same, which called for his monumented positions or corners of S.W. 62, N.W. 62, N.W. 63, and S.W. and N.W. 64.

To locate tract No. 4 south of survey 61, Sanders testified that he found and identified the I R rock or Red Barn corner for Kuechler's southeast corner of 61; that for the south line of 61 he turned 12 degrees to the right of a bluff for Kuechler's north and at right angle thereto for Kuechler's east and west. Kuechler's field notes do not call to turn 12 degrees to the right, but Sanders testified that from calls farther down the river he arrived at Kuechler's north by turning 12 degrees to the right of a bluff; and that he thereafter correlated all of his locations of Kuechler's work to that angle; and that by running the south line of 61 on that course he constructed it to be about 23 varas north of Dod's marked northwest corner of 60, and found Kuechler's southwest corner of 61 to be about 26 varas north of Dod's marked southwest corner of 61, thus showing the vacancy depicted on his map as tract No. 4.

■ Sanders has no authority to change Kuechler's call from a due west course for the south line of 61 to a turn 90 degrees to the left from Kuechler's north course. Sanders arrived at his conclusion that Kuechler's call north was actually 12 degrees east from the bearing call farther down the river from a bluff at Kuechler's Pecos Spring, which according to Sanders' testimony showed that Kuechler's north was actually 12 degrees east of this bearing. The south line of 61 had to be run or located on Kuechler's call for due west course unless the lines of said survey actually run by Kuechler showed a uniform variance from due course. This could not be shown, because Kuechler did not actually run any of the lines of 61. The fact that Kuechler called for a bluff bearing 12 degrees to the right of Pecos Spring was immaterial and of no probative value on the issue of a uniform variance from due course in any of the lines of 61 actually run by Kuechler, because he did not run any of said lines. Brooks v. Slaughter, Tex.Civ.App., 218 S.W. 632; State v. Franks, Tex.Civ.App., 113 S.W.2d 589, error refused. Nor does the evidence show where the south line of 61 would be located on the ground if run on a true west course as called for in Kuechler's field notes. The State had the burden of showing where on the ground the south line of 61 would be located if run on a true west course with reference to Dod's marked northwest corner of 60 and his marked southwest corner of 61. This it did not do, and in consequence the jury was given no basis for calculation of this claimed vacancy, if any were shown, at the point depicted as tract No. 4 on Sanders' map. Smith v. Griffin, 131 Tex. 509, 116 S.W.2d 1064.

Sanders located tract No. 3 north of 62 and tract No. 2 north of 63, as depicted on his map, by his proration method. In reconstructing Kuechler's river surveys from the north line of 545 to the south line of 61, Sanders found an excess of 28 varas per survey, which added to Kuechler's call for 950 varas gave the back or west lines of said surveys a distance of 978 varas each. To locate tract No. 3 he found Dod's marked northwest corner of 62 and found that his own prorated north line of Kuechler's 62 was south 17.8 varas for a distance of 498 varas east to the west line of 63. To locate tract No. 2 he found Dod's marked northwest corner of 63 and found that his own prorated north line of Kuechler's 63 was south 49.3 varas for a distance of 509 varas to the west line of 64.

The motion for an instructed verdict was granted upon the ground that no vacancy was shown as to either tract No. 3 or tract No. 2, because Sanders' testimony did not locate or identify the north line of 545, his testimony being merely his opinion as to the location of said line, and therefore without any probative value.

To prove Sanders' theory of proration it was necessary to locate the north line of 545 (originally 66) according to the field notes of Kuechler. His field notes for the north line of 545 and the south line of 67 called for a stone mound marked I R at one point and an I R rock on top of a small hill at 750 varas from the river to a stake on the bank of the river for the northeast corner of 545, and at which corner the field notes called for two mountain bearings. The hill Sanders took, which in his opinion more nearly fit the descriptions of Kuechler's small or round hill than did other nearby hills, was only 675 varas from the river. Sanders did not find the I R rock on the top of his hill, and the mountain bearings at the northeast corner of 545 did not check from the point which he took on the river bank 675 varas from the hill he used. Kuechler's field book showed that he ran south from the northeast corner of 67 a distance call of 950 varas, and established a rock mound, and then ran east 90 varas to a round hill stone mound marked I R, and thence east to Pecos River 750 varas to a stake with the mountain bearings referred to in his field notes; thence south 110 varas with the river, at 280 varas to cross slough, 412 varas; thence east 375 varas to a river bank. Sanders testified that from his hill 675 varas from the river none of the field notes or field books calls fit. Briefly summarized, his testimony was that he found no I R rock or mound on the hill he used; that the distance from this hill to the river did not fit Kuechler's field notes; that Kuechler's call for mountain bearings at the northeast corner of 545 did not fit; and that running south from this point none of the objects or distances mentioned in Kuechler's field book could be found. Sanders made no attempt to locate the southeast corner of 67, and made no attempt to identify Kuechler's run from the southeast corner of 67 to the hill used, although Kuechler's field book stated that he ran south 950 varas from northeast corner

of 67 and established a rock mound; thence east 90 varas to a round hill stone mound marked I R; and thence 750 varas to stake on river bank with mountain bearings. Sanders further testified that there were several hills in the vicinity of the one used by him. He gave no description of them, nor their respective distance from the river. His only description of the hill used by him was that it more nearly, in his opinion, fit Kuechler's description of a small round hill than did the several other small hills in that vicinity. Sanders' hill was only 675 varas from the river, instead of 750 varas as called for by Kuechler. There was no evidence that the river had changed its course at this point, and Sanders testified that he found no evidence showing any change in the course of the river since Kuechler's survey in 1876.

■ We are of the view that the evidence detailed constitutes merely the opinion of Sanders that the hill used by him more nearly fit the hill called for in Kuechler's field notes or field books. The location of this hill was the only way he attempted to locate the north line of 545. No testimony of any sort supported his claim that the hill used by him was the hill called for in Kuechler's field notes. Not one call for any object, corner, bearing or distance in Kuechler's field notes or field books fit or checked with the hill used by Sanders. His testimony in the light of the facts detailed is merely his opinion concerning the hill used by him; and in any event, his testimony as to the location of the hill used by him not being supported by any field notes or field books call for any object, corner, bearing or distance, is without probative value. The rule is settled that a surveyor cannot give his opinion as to the location of corners or lines of a survey, because such location is a mixed question of law and fact. Fulcher v. White, Tex.Civ.App., 48 S.W. 881; Randall v. Gill, 77 Tex. 351, 14 S.W. 134; Houston & T. C. R. Co. v. McGehee, 49 Tex. 481; Purnell v. B. F. Gandy & Son, 46 Tex. 190; Halff v. Curtis, 68 Tex. 640, 5 S.W. 451; Aransas Pass Colonization Co. v. Flippen, Tex.Civ.App., 29 S.W. 813; Bugbee Land & Cattle Co. v. Brents, Tex.Civ.App., 31 S.W. 695; Goodson v. Fitzgerald, 52 Tex.Civ.App. 329, 115 S.W. 50.

■■ It is true that Sanders testified, without objection, that some years prior to the time in question he saw a map made by another surveyor, which showed the location of the hill used by him at the point 675 varas from the river. The map of the other surveyor duly proved up would have been the best evidence and Sanders' testimony was in this respect purely hearsay, and is of no probative value. Such incompetent testimony cannot be considered even though admitted without objection. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533.

It may be here observed that Sanders' total prorated length of the west lines of 61, 62 and 63 is 2,934 varas, while Dod's total length of the same lines is 2,979 varas, a difference of 45 varas. This difference alone would practically eliminate tract No. 2, which Sanders depicts on his map as having an average width of 49 varas. The difference between the prorated lines of Sanders and Dod of 61 and 62 is 30 varas, which would entirely eliminate tract No. 3, which Sanders depicts on his map as having an average width of about 17 varas. Dod's prorated lines were approved, and patents issued to the Yates surveys 34½ and 12341 were based thereon.

Sanders located his tract No. 1, as depicted on his map, by a method which he claims has no relation to his method of proration of excess between the southeast corner of 61 and the north line of 545. That is, by finding Dod's marked northwest corner of 63 and by giving the south line of 63 Kuechler's full call distance of 3,508 varas back from Sanders' prorated point at the river, he found that the west line of Kuechler's 63 would fall an average of about 56 varas short of a line drawn south from Dod's marked northwest corner of 63 to his southwest corner, thereby creating tract No. 1, as depicted on the map. Thus Sanders makes the test of whether tract No. 1 is vacant land depend upon whether he has correctly located his prorated southeast corner of 63 at the river bank in accordance with Kuechler's survey in 1876.

Sanders testified that he did not find on the ground any object fitting Kuechler's field book or field notes calls for the northeast corner of 63 and the southeast corner of 64 on the bank of the Pecos River. Kuechler's field book of 63 states that he ran east "to a stone mound on the west bank of the Pecos River below two islands and a ripple made for the upper corner of this survey." Kuechler's field notes for 64 call to begin "at a stone mound marked I R on the west bank of the Pecos River below two islands and a ripple made for the upper corner of Sur. No. 63." Sanders did

not find the stone mound marked I R and did not find any indication of where this corner was below two islands and a ripple. He testified that in his opinion the river had not changed its course at this point. Dod's report showed that the river had changed its course 106 varas east at this point since Kuechler made his survey in 1876.

Sanders further testified that if you use Kuechler's field notes calls under his own system of proration of excess between the southeast corner of 61 and the north line of 545, the west line of 63 would be located approximately 122 varas west of the west line depicted on his map for 63. He also testified that if you take Kuechler's field book calls and run south from his northeast corner of 63 you would not reach the river bank as it is now located; but that you would reach at the called distances the bank of a slough; that if you ran Kuechler's distance of 3,508 varas west from the slough, it would place you more than 100 varas west of where his map shows the west line of 63 to be; and that tract No. 1 would not exist as a vacancy.

Sanders' opinion that the river had not changed its course at the point in question is not supported by any probative evidence. No Kuechler call would reach the bank of the river as now located. His calls reach a slough west of the river bank as found by Sanders. If Kuechler's distance of 3,508 varas is run west from the slough, tract No. 1 as depicted on Sanders' map does not exist. Sanders admitted that if his method of prorating the excess to surveys 61, 62 and 63 is applied, tract No. 1 as depicted on his map does not exist.

Kuechler did not locate nor run the north, south or west lines of any of his river surveys. Dod made his resurvey of Kuechler's work under the provisions of Art. 5323, and under the direction of the Land Commissioner for the purpose of locating and placing the two Yates surveys between the west lines of Kuechler's river surveys and the east lines of Block 194 and other surveys. As concerns this case it was necessary for him to locate on the ground the southwest and northwest corners of particularly surveys 60, 61, 62, 63 and 64. He made elaborate reports to the Commissioner as his work progressed, and made such corrections as the Commissioner directed. He marked and monumented the southwest and north-west corners of 60, 61, 62, 63 and 64, except the southwest corner of 63, which located the west lines of these surveys, each of which was given a prorated length of 993 varas under the direction of the Land Commissioner, but an actual survey shows according to Sanders' map a slight excess in the length of the west lines of 61, 62 and 63 between Dod's marked corners over his prorated length of 993 varas. The back or west lines and parts of the south and north lines of these river surveys take the form of an inverse stairway, and of necessity Dod's marked and monumented corners not only located their west lines, but also located the portions of the south and north lines from the point where the perpendicular west lines reach the north or south lines and back west to the next marked corner, the surveys being built from south to north. The Land Commissioner approved and accepted Dod's corrected and final field notes and work as to both of the Yates surveys, and later the State issued patents on such field notes, which call for Dod's marked and monumented corners of these river surveys with bearings, all of which have been recognized and readily located on the ground, and from which the west lines and the portion of the south and north lines between his marked and monumented corners have been and can be readily located on the ground. These facts are undisputed and conclusively show that the Land Commissioner and the State intended to call for an adjoinder of the Yates surveys with surveys 60, 61, 62, 63 and 64, and did not intend to leave tracts Nos. 1 to 4 as depicted on Sanders' map as vacant land; and intended not only to call for adjoinder at all the marked and monumented corners, but to tie the Yates and river surveys together so as to have common corners and common lines south, west and north, at least from the southwest corner of 60 to the northwest corner of 64 as involved in this case. These facts bring the instant case and as concerns tracts 1, 2, 3 and 4 within the rule stated in Findley v. State, 113 Tex. 30, 250 S.W. 651, and Gulf Oil Corporation v. Outlaw, 136 Tex. 281, 150 S.W.2d 777, to the effect where the field notes show that separate tracts or sections of land are tied together and have common corners and lines, it is not necessary to resort to rules of construction of the field notes, because they speak for themselves and exclude the

supposed vacancy; and the only question to be determined is where the common corners and lines are located.

■ This rule is peculiarly applicable to the Yates and river surveys, because at the time Dod made his surveys the Yates surveys were vacant land and the river surveys had never been located on the ground, and the clear and manifest intention of the Land Commissioner and the State was to tie them together with common corners and lines and so as to locate them on the ground and take up all vacant land between them. Since the river surveys had not been located Dod's marked corners are in the nature of and should be treated as original corners, and not to so regard them will simply leave the matter where it was and subject to other claimed vacancies which might later arise and find support in another resurvey of the river surveys by another qualified surveyor, or which might be based upon a different theory in support of a claimed vacancy. We therefore conclude that considering the aforementioned undisputed facts apart from any question of judicial estoppel or res adjudicata, we find that it did not raise any issue of fact as to the location of the river surveys as contended by the State, nor raise any issue of fact as to the existence of either of tracts Nos. 1 to 4 as depicted on the Sanders' map.

■ We also sustain the conclusion of the trial court that the State having either itself or by its agent taken the position in the Turner, California and Mid-Kansas cases that Dod had correctly resurveyed, located, and marked on the ground Kuechler's river surveys here involved, and having as the result of taking that position recovered other valuable lands, it cannot now between these same parties take the position and recover tracts Nos. 1 to 4 as vacant lands upon the theory or ground that Dod did not correctly survey and locate these river surveys; but that its presently employed surveyor Sanders has now correctly resurveyed and located the river surveys so as to show tracts Nos. 1 to 4 on his map as vacant lands between Dod's marked corners and lines and Kuechler's senior lines. This conclusion is based upon the doctrine of judicial estoppel, or the doctrine of "the conclusiveness of the judgments."

The parties to the instant case were parties to either one or the other of the aforementioned cases. The State makes no contention that the doctrine of judicial estoppel or conclusiveness of judgments is inapplicable because not between the same parties, but makes the contentions (1) that the State was ignorant at that time of the incorrectness of Dod's work; and (2) that the findings and decisions of the aforementioned cases that Dod had correctly located and marked the river surveys from 61 to 69, inclusive, were based upon assumption and were merely incidental to the main question to be determined, which was to determine the correct or proper method to be used in the location of the surveys in block 194, and particularly their east lines. Neither contention is sustained.

■ If the State could ever raise such an issue of fact as to its ignorance of the incorrectness of Dod's work when these cases were tried and finally disposed of, it has not done so in the instant case by either pleading or proof.

The second contention is not sustained, because it is implicit from the opinions and judgments in the Turner, California and Mid-Kansas cases that it was necessary for the courts to determine the location of the river surveys involved, and that the express findings and conclusions that Dod had correctly and definitely located them on the ground were as necessary to the final judgments rendered as were other issues or questions, including the question of the proper method of locating the east lines of the surveys in block 194, although later cases have construed the aforementioned cases as determining primarily and as a matter of law the question of the proper method of locating the surveys in block 194. Federal Royalty Co. v. State, 128 Tex. 324, 98 S.W.2d 993; and first and second Stanolind cases, where in the latter case the court expressly reserved from determination the question of judicial estoppel as here urged, because the question was not properly raised in the Stanolind case.

Both the Court of Civil Appeals, 13 S.W. 2d 152, and the Supreme Court, 122 Tex. 338, 61 S.W.2d 792, 794, held in the Turner case, and this court in the California case, that it was necessary for Dod to locate the west lines of the River surveys (61 and 62) and the east lines of the surveys in block 194, in order to determine whether the Bob Reid and part of the Turner vacancies existed. In the Turner case the Supreme Court say: "A decision of the question

whether the alleged vacancy of fact exists depends upon the proper construction of the surrounding surveys," and the court included the River surveys among them; and held that "Dod ran out the west line of this block and placed certain monuments on the ground along said west line. The location of this block is not disputed by any of the parties to this suit." The Supreme Court also adopted the elaborate fact findings of the Court of Civil Appeals in the Turner case, referred to and used Dod's field notes and reports, and approved his method of prorating the excess to the River surveys; and the Supreme Court further say that "Dod's second report and field sketch showed that he located an east line and corner of the Yates survey at the southwest corner of survey 61, block 1, I. & G. N. R. R. Co., as located by him, by an actual corner on the ground with bearings; thence he ran up north along the west line of said survey 61; thence, turning west, he ran out the extreme north line of the Yates survey 308 varas, and established its most northerly northwest corner and entire west boundary line. Along this line as thus established, Dod plotted in Yates survey of 2,486 acres from known and fixed corners on the west line of the river surveys."

 The State prevailed in each of the three suits aforementioned, and the opinions and judgments therein show conclusively that the location of the river surveys was necessary; that the court found from the facts that Dod had located and marked their corners and west line; and that "the location of their west line is not disputed by any of the parties to this suit." Thus the court clearly found the facts as to the location of the river surveys, and did not assume the fact of their location, but found that their location where marked by Dod was not disputed by any party to the suit. These facts bring the instant case within the rule stated in the case of Stephens County v. Hefner, 118 Tex. 397, 16 S.W.2d 804, 807, wherein it is held: "It has been repeatedly held that a proposition assumed or decided in order to establish another proposition which expresses the conclusion of the court is as effectually passed upon and settled as the very question directly decided. * * * It is a mistaken opinion that nothing is decided in a case except the result arrived at. All the propositions assumed by the court to be within the case and all the questions presented and considered, and deliberately decided by the court, leading up to the final conclusion reached, are as effectually passed upon as the ultimate questions solved."

In Tompkins v. Hooker, Tex.Civ.App., 200 S.W. 193, 196, it is held: "The conclusiveness of the adjudication depends upon the source from which it came and the issue it determined, and not upon the violence of the controversy. If the parties by their agreements and confession dispensed with the necessity for offering an array of evidence, the issue to be determined was not for that reason robbed of its importance or altered in its nature."

 That the State profited by taking the position that Dod had correctly surveyed the river surveys and located their west lines from his marked corners, is conclusively established. Dod's west lines of these surveys were stopped short of Kuechler's called distances for the north and south lines from 122 to 164 varas. Sanders' resurvey showed the same chopping off of Kuechler's south and north lines, which he testified he was compelled to do because of the decision in the Turner, California and Mid-Kansas cases. These strips of land were placed in the Bob Reid, Turner No. 1, and in the two Yates surveys by the Turner, California and Mid-Kansas cases, and the State obtained its title to this land through judgments in said cases. It has no title otherwise. The State is therefore estopped to claim the benefits of these judgments based upon the erroneous surveys of Dod, which it then contended was correct, retain this land, and to now sue for other lands based upon the claim that Dod's surveys were erroneous. Bond v. Kirby Lumber Co., Tex.Civ.App., 47 S.W.2d 891. The ultimate effect of the State's contention is that the judgments in the Turner, California and Mid-Kansas cases were wrong because based upon Dod's erroneous survey, although the State took the position in said cases and recovered valuable lands upon the ground that Dod's survey was correct.

The cases of State v. Selby O. & G. Co., 135 Tex. 146, 139 S.W.2d 781; State v. Franks, Tex.Civ.App., 113 S.W.2d 589, error refused; Delaune v. Beaumont Irrigation Co., 60 Tex.Civ.App. 452, 128 S.W. 174, cited by the State on the point that Dod only established the west line of the river sur-

veys and did not establish their north and south lines, are not in point. These cases simply hold that where a court locates a survey from its own defined field notes, a mere incidental call for the boundary line of an adjacent survey does not effect an adjoinder of the two; and that the determination is not stare decisis of the location of the line of the latter survey. No such facts existed in the Turner and related cases. In these cases it was necessary for the court to determine whether the river surveys had been located on the ground by Dod. They were office surveys and it was necessary to establish their north and south lines by course and distance calls to locate their west lines. The back or west lines and parts of the north and south lines of these surveys were in form an inverse stairway, and of necessity Dod's marked and monumented corners not only located their west lines, but also located the portions of the south and north lines from the point where the perpendicular west lines reach the north and south lines and back west to the related marked corners. These facts conclusively show that it was necessary to locate and tie all the related surveys together at corners and common lines called for in the field notes of the river and Yates surveys made by Dod and approved by the Land Commissioner and State, all of which facts the courts adjudicated and determined in the Turner and related cases, holding that such facts were undisputed. These common corners and lines so adjudicated in said cases cannot be readjudicated in the instant case, either upon the ground that the State was ignorant of the alleged erroneous survey by Dod or upon the ground that the location of the river surveys or their north and south lines were merely incidental to the main issue in the Turner and related cases,—the proper method of locating the surveys in block 194. The determination of the proper method of location of the surveys in block 194 was only the means to the end, which was to locate by that method the said surveys on the east, to ascertain if the vacancies existed between them and the marked corners and lines of the river surveys.

Tract No. 10 is located on Sanders' map between the north line of the Bob Reid survey and the south line of Yates survey 34½. It involves a strip of land, according to the map, about 58 varas north and south and about 498 varas east and west. The State sought a recovery of this tract as vacant land upon either one of two asserted factual grounds: (1) Whether the present location on the ground of a rock mound bearing west 356 varas and a smaller rock mound bearing west 497 varas from Dod's northeast corner of survey 34, block 194, is the same as was their location on the ground at the time Dod made his survey and field notes of the Yates survey 34½ and the State patented same; or (2) if their location is the same now as originally, whether Dod's calls therefor were by mistake. The State contends that the court erred in instructing a verdict on the ground of "no vacancy" shown as to tract No. 10, because its evidence was sufficient to raise a fact or jury issue as to each of these grounds. The State's theory is that if the jury should find that the present location of these rock mounds is not their original location, then the calls for them must give way to course, distance and quantity calls; that if the jury should find that the present location is not the same as when Dod called for them, and should further find that he called for them by mistake, then such calls must be ignored and calls for course and distance must prevail in the location of the northeast corner of survey 34, with the result that such corner would be located at a point 164 varas west and 11 varas north of Dod's northwest corner of survey 62, block 1, under the course and distance calls, and that if the present location of the rock mounds be regarded, the northeast corner of survey 34 would be located at a point 164 west and 43 varas south of Dod's northwest corner of 62, thus leaving the alleged vacancy sued for as tract No. 10.

We are of the view that considered as an original proposition and aside from any question of judicial estoppel or stare decisis, the undisputed facts show that the location of the south line of survey 34½ is coincident with the location of the north line of the Bob Reid survey.

 In actually surveying on the ground and platting in the Yates survey 34½ Dod ran a line from the northwest corner of survey 5, block 194, and thence east along what he thought was the north lines of surveys 37, 36, 35 and 34, block 194. It is undisputed that this line of Dod's was south of and in partial conflict with the true location of the north lines of these surveys and the northeast corner of survey 34. It is also agreed that at all points where Dod's line is in conflict with these senior surveys,

it must yield to the senior surveys. The land here involved, however, is not along these points of conflict. It lies east and south of the true northeast corner of 34, adjoins and east of the east line of 34. When Dod made his survey of 34½, and passed the east line of section 34 he was then surveying the Public Free School Land, and in consequence his footsteps must be followed. The fact that Dod was off course on the north lines of the surveys in block 194, and that his calls therefor were incorrect, does not affect his footsteps as found on the ground east of the east line of 34, which is the point at issue in this case. He definitely marked on the ground' what he thought was the northeast corner of 34 with the two rock mound bearings, and his field notes call for this point to be the south line of 34½, and the patent calls for the same marked south line of 34½. Likewise, the field notes and patent calls of the Bob Reid survey call for these same objects with identical description as its north line. Thus the intention of the State is manifest to the effect that it intended that these marked lines of the Yates 34½ and the Bob Reid survey should be coincident. These facts bring tract No. 10 sued for as vacant land within the rule of the cases of Findley and Outlaw, supra, to the effect that where the field notes show that separate tracts or sections of land are tied together and have common corners and lines, it is not necessary to resort to rules of construction of the field notes, because they speak for themselves and exclude the supposed vacancy; and the only question to be determined is where the common corners and lines are located. Since the State cannot pull these common corners and lines apart so as to establish a vacancy between them, and since it has parted with the title to the land by patent on either side of the common line, it is not concerned with its actual location on the ground. Manifestly, if the bearings called for at the point in question as locating the south line of 34½ do not fit, then the same bearings called for in the Bob Reid survey do not fit. But such facts do not authorize the State to pull or separate these surveys so as to create a vacancy between them, and such common boundary line must be located by the objects placed on the ground and marked by Dod and called for in his field notes. Sanders found these rock mounds south of a line projected east from the true location of the northeast corner of 34. The field notes of Dod are harmonious and call for these rock mounds which Sanders found on the ground, as described, which settles the matter of the location of the south line of Yates survey 34½. Dod's footsteps are established on the ground by his marked objects, which marked objects must prevail over calls for course and distance, and other means may not be resorted to to locate such south line of survey 34½ at a different point from that described in the field notes. Thompson v. Langdon, 87 Tex. 254, 28 S.W. 931; Anderson v. Stamps, 19 Tex. 460; Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317; Gill v. Peterson, 126 Tex. 216, 86 S.W.2d 629. There is no conflict between the surveys where survey 34½ joins the east line of block 194 and thence east; and the fact that in order to give effect to Dod's survey at this point would result in a jog in the south line of 34½ is not material. Woods v. Robinson, 58 Tex. 655.

Our conclusion that the evidence does not raise an issue of fact as to tract No. 10 being vacant land is sustained by the above cited Federal Court decisions, which involve the same parties and land here involved, and which decisions we regard as having great weight and as being highly persuasive. We also agree with the holdings of these same decisions that the State is concluded under the rules of judicial estoppel from disputing the location of the south boundary line of the Yates survey 34½ as not being coincident with the north boundary line of the Bob Reid Survey, due to the judgment in favor of the State in the California case, by which judgment the State recovered the Bob Reid Survey as vacant land.

The judgment in the California case describes the Bob Reid Survey as "beginning at a point in the south line of Survey 34½ patented to I. G. Yates as such south line of said Survey is fixed in the patent to the same," and then calls for the same rock mound bearings described in the patent of survey 34½. The Bob Reid patent, based upon the judgment in the California case, describes that survey exactly as said judgment describes it; and it is not disputed that the judgment in the California case locates the north line of the Bob Reid Survey in the south line of the Yates survey 34½.

In the California case John H. Tyler intervened and sought to recover as vacant

land under a previous application made by him therefor, a tract of land which as described would include tract No. 10 here sued for by the State. The State contested his intervention, and his claim that a vacancy existed as described. The court permitted Tyler to intervene, tried his claim of vacancy on its merits and decreed that Tyler take nothing by his suit in intervention, and that the State and other defendants as to the intervention of Tyler go hence without day. See in this connection and as to the effect of this take nothing judgment the case of Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152. The documentary evidence showing these facts was introduced in the instant case and we regard it as conclusively showing that the north line of the Bob Reid survey was decreed to be in the south line of the Yates survey 34½. The same rock mounds located in the same manner were called for. The same calls fix the location of the south line of 34½ as fix the location of the north line of the Bob Reid survey. It was adjudicated in the California case that their south and north lines were coincident, and in which case the location of the south line of 34½ at the points involved in this suit was an issue, the question determined being that there was no vacancy between the south boundary line of 34½ and the north boundary line of the Bob Reid survey. The State having taken the position against the vacancy in the California case, it is estopped by the judgment in that case from now asserting that such vacancy does now exist.

The contention of the State that the issue of the location of the Bob Reid survey in the south line of the Yates survey 34½ was taken out of the California case by the opinion of this court on motion for rehearing (70 S.W.2d 452) is not sustained. The quoted portion of our opinion relied upon has reference to the matter of a conflict between block 194 and survey 34½. It has no reference and does not relate to the matter of the location of 34½ at the point where the north line of the Bob Reid survey was called to be located. Such statement of this court could not modify the judgment in the California case, which decreed that the south and north lines of said survey are coincident, and which judgment this court approved and affirmed. Eastern States Petroleum Co. v. Gilliland Refining Co., Tex.Civ.App.,

151 S.W.2d 933, writ refused, correct judgment.

Tract No. 8 is located on Sanders' map north of a north line of survey 32, block 194, and tract No. 9 is located north of a north line of survey 33, block 194. Sanders testified that he located these two claimed vacancies by constructing block 194 off of block Z in accordance with the opinion of the Supreme Court in the Turner case and the opinion of this court in the California case by carrying the excess of 30.2 varas per section found in block Z into the surveys of block 194, which call for corners of the eastern tier of surveys of block Z. He then located on the ground Yates scrap file No. 12341 and the Turner surveys Nos. 1 and 2. He testified that according to his location on the ground of these surveys the areas delineated on his map as tracts Nos. 8 and 9 were not included within any of said surveys and were vacant tracts.

As pointed out in the California case, neither the most westerly northwest corner of survey 31, nor the northwest nor southwest corners of surveys 32 and 33 were tied by intervening calls to block Z, and under the method of location adopted neither took any of the 30.2 varas per survey excess. Based upon these premises the method used by the State in the instant case was to shorten the most northerly west line of 31 by 60 varas, and thus pull the north and south lines of 32 and 33 south by the same distance and to thus create the vacancies sued for by the State as tracts Nos. 8 and 9.

Sanders testified that the tier of surveys from 21 west to block Z are located in excess of their field notes calls 90.6 varas from the southeast corner of block Z, and that the most northerly southwest corner of 31 is located 90.6 varas north of the southeast corner of block Z. Sanders further testified that the original field notes of section 31 call for its most northerly west line to be 505 varas, but that he placed it on his map as 444.6, and that if 31 is given its field notes call for 505 varas for its most northerly west line, and 32 is given its field notes west line call for 1,210 varas, and 33 is given its field notes west line call for 2,377 varas, then neither tract No. 8 nor tract No. 9 would exist as vacant land. No explanation or reason is shown for shortening the most northerly west line of 31 from 505 varas to 444.6 varas, and in consequence the State offered

no proof showing tracts No. 8 and No. 9 to be vacant land as depicted on Sanders' map.

The judgments in the Turner, California and Mid-Kansas cases preclude tracts Nos. 8 and 9 as vacant land under the rules of judicial estoppel and stare decisis. By these judgments the State recovered the B⌐ʰ Reid and the six Turner vacancies under the method approved for locating all of the surveys in block 194, including surveys 31, 32 and 33. According to the method prescribed by the judgment in the California case, surveys 31, 32 and 33 are adjacent to and coincide with the corners of the six Turner tracts, and with the west line of the Yates survey 12341 as called for in its field notes. By the judgments in the Turner and Mid-Kansas cases the State recovered the six Turner tracts as described in their patents under the method prescribed for their location, which had the effect to locate the surveys in block 194 and the Turner tracts, so that said surveys coincide and are connected and adjacent as called for in their field notes, without any vacancy between them. By having taken this position that the boundary lines and corners of these surveys adjoin, coincide, and are connected and adjacent, and having recovered the land under such theory of location of them, the State is estopped by such judgments from changing the location of surveys 31, 32 and 33 so as to create the vacancies delineated on Sanders' map as tracts Nos. 8 and 9.

The Supreme Court decision on the last appeal of the Whiteside case, 128 Tex. 324, 98 S.W.2d 993, is also res adjudicata and conclusive of the question that neither tract No. 8 nor tract No. 9 exists as a vacancy. The court held in that case that the method of location and the actual location of the surveys in block 194, including 31, 32 and 33, had been settled under the doctrine of stare decisis; that it had determined the location of the east boundary line of the surveys in block 194 as a matter of law by its opinion in the Turner case and by its opinions in answer to certified questions in the California and Whiteside cases; and that any attempt to locate said surveys by any other method of construction "would lead to intolerable confusion and work a palpable injustice."

The judgment of the trial court is affirmed.

Affirmed.