### STANOLIND OIL & GAS CO. et al. v. WHEELER et al.

#### No. 4823.

Court of Civil Appeals of Texas. Eighth District.

Jan. 23, 1952.

Rehearing Denied Feb. 27, 1952.

Turner, Rodgers, Winn, Scurlock & Terry, George S. Terry and C. Sidney McClain, all of Dallas, L. A. Thompson, Jr., Tulsa, Okl.; Martin A. Row and J. W. Timmins, both of Dallas, for appellants.

Price Daniel, Atty. Gen., H. D. Pruett, Jr., Ben H. Rice, III, and James Weeks, all Assts. Atty. Gen., for appellee, State of Texas.

Paxton Howard and Richard L. Hughston, Midland, for appellee, Shell Oil Co.

Whitaker, Turpin, Kerr, Smith & Brooks, Midland, for appellees, Wheeler & McGahhey.

SUTTON, Justice.

This is an appeal from the District Court of Winkler County. The suit, brought in trespass to try title, is one of pure boundary, and involved a small strip of ground of approximately six acres, being two miles long and an average width of some nine and one-half varas, that is, 6.8 varas wide at the north end and 12.5 varas at the south end.

Stanolind Oil & Gas Company, as owner of mineral interests in Sections 15 and 16 T & P Block 46, Township 1 South, and Sun Oil Company and Stanolind, as owners of mineral interests in Sections 13 and 18, Block B-7, Public School Lands, all in Winkler County, brought the suit against C. O. Wheeler, A. C. McGahhey, and Shell Oil Company, Inc., owners of the fee and mineral interests in the area involved in the suit. The trial was to the Court and the judgment that plaintiffs take nothing, from which the appeal is prosecuted.

The issue in question is the proper ground location of the west line of Block 46, T & P Township 1 South. There was no request for findings and conclusions and accordingly none are in the record. The record is a very large one and we have given it very careful consideration and have concluded the issue is simpler than the record would indicate.

The area involved is a portion of a strip claimed by the defendants to lie between Blocks 46 T & P and Block B-7, Public School Lands, as recognized by the Commissioner of the General Land Office and patented as a vacancy in 1940. The plaintiffs take the position no such vacancy ever existed and the two blocks have a common boundary and the trial court accordingly erred in rendering the judgment against them.

The plaintiffs have briefed five points of error, which briefly are, the trial court erred in entering judgment for the defendants because (1) prior to the official ground location by Twitchell and Boone the west line of Block 46 had only a theoretical location; (2) the Twitchell-Boone line run for the west line of Block 46 was an official ground survey of that line run under statutory authority and direction of the Commissioner; (3) that to now locate the west line of Block 46 according to its theoretical location would put it west of the Twitchell-Boone line and in conflict with Block B-7 its entire length; (4) it was the unquestioned intention of the State and all its officers to make Public School Land Block B-7 adjoin T & P Block 46; and (5) this Court having already held in State v. Flick, Tex.Civ.App., 180 S.W.2d 371, that

Twitchell's "B" Block Survey left no vacant strips between it and the T & P Blocks the matter is now stare decisis. Points 1 and 2 are briefed together. We have concluded these points must be sustained. In their presentation the plaintiffs agree the Woods pipe is the official N. W. Corner of Block 46.

The two Blocks, 46 T & P and B-7 Public School, are within the original T & P reservation and lie south of the "Center Line". The T & P Reservation and the "Center Line" are fully explained in State v. Flick. Block 46 is a narrow Block, being only three sections wide, whereas the T & P Blocks are normally six wide. In 1900 there was a vast area of unsurveyed public lands south and west of Block 46 T & P, and as well north. Col. S. D. Woods, a State surveyor, had surveyed the area north of the Center Line and died about the time he was ready to survey the area south. W. D. Twitchell was directed by the Commissioner of the General Land Office to complete the survey south. Before sending him into the area he received instructions from the Commissioner orally in Austin which were followed by further written instructions contained in the letter copied in the Flick case at page 379, first column, 180 S.W.2d 371. The following rough sketch will help to make the testimony referred to a little plainer and more apparent the area involved in the law suit:

193  192  190½ 190  189  188  187  186  185  183½ 183

CENTER                    LINE

Block B-7        Block 46        Block 45

Boone ran south from here.

Estes ran south from here

13      15

18      16

O  Boone & Estes met here, or 1 mile west

The disputed area is represented by the heavy black line between surveys 15 and 16 Block 46 and 13 and 18 Block B-7.

Col. S. D. Woods in 1899 ran his connecting line (the line referred to in Twitchell's instructions) from the southeast corner of New Mexico to the T & P Surveys and at or near 192 MCL (Mile Center Line) drove an iron pipe. This is referred to in this record as the "Woods Pipe" and the "Woods MCL 192". It is the contention of the defendants this is the original T & P 192. The plaintiffs do not concede this but say a proper and logical construction is to locate 192 at a prorated point between 189, 190, 190½ and 193 recognized and admitted T & P originals. Twitchell's testimony is he picked up the Center Line at MCL 183 to the east and followed it to the Woods pipe in accordance with his instructions. It is undisputed that Twitchell accepted the Woods pipe for MCL 192 and ran south from it. He accepted it as the northwest corner of Block 46 T & P, as do the defendants. Twitchell had two surveying crews, one headed by transit man Robert Estes, and the other by Daniel Boone. At MCL 183 Estes turned south and ran 16 miles. He then ran the zig-zag, stairstep line around the T & P surveys back to the point on our sketch meeting place of Estes and Boone. Twitchell and Boone (at least Boone) continued on the Center Line to the Woods pipe. There Boone turned a right angle to the general course of the Center Line as run by them, as Twitchell put it, went south 8 miles, east 3 and south 1 until he met Estes. Their courses did not coincide and Twitchell instructed Estes to correct his to Boone's and close. Boone marked his run and established the corner where he and Estes met (or probably a mile west). As we understand it, the parties to this suit agree the Boone line was marked, is established and recognizable on the ground at the present time. All the surveyors who testified in the case agree on that line. The difference is plaintiff's contend the Boone line was run as the west line of Block 46 T & P and the defendants say it was run as a base line from which Twitchell's work was done and adopted as the east line of Block B-7 without regard to the location of the west line of 46 T & P.

The east line of 46, which is common with the west line of 45, is in part monumented as indicated on the sketch by the circles (0) which are recognized as original T & P markings and the line is recognized by all the surveyors and not disputed. The monuments are not exactly in a straight line but the variance is negligible. All the surveyors, as we understand them, agree the south line of Block 46 T & P is properly run parallel to the Center Line, which is the north line of the block. Defendants insist the west line of Block 46 T & P is properly located or constructed course and distance parallel with its east line. This is thought to be the more logical construction, because it coincides with the work immediately east and agrees otherwise and might have been properly adopted and run by Twitchell, but that he did not do. He adopted and accepted the Woods pipe as the northwest corner of the block and in accordance with the T & P calls turned a right angle at the Woods pipe and ran his line south accordingly. The east line, as monumented and accepted does not run exactly at right angles to the Center Line. Mr. Estes testified he turned a right angle at 183 when he started south and discovered he was running a little west of the T & P monuments.

Twitchell's testimony plainly reveals his purpose was to locate and run the west line of Block 46 T & P and tie to it his Public School Land Blocks. The east tier of sections in B-7 all call to adjoin with the west line of 46. In response to the inquiry why he started on the Center Line he said: "Well, I had to find the unsurveyed lands that adjoined the T & P lands on the west, and the Center Line of the T & P land is the major line from which all the T & P lands are surveyed and adjusted."

Twitchell continues, saying Boone went to the Woods pipe and turned a right angle there perpendicular to the major base line they had put in, retracing the Center Line, perpendicular to the general course of the Center Line as run by them, and then made a right angle turn which put him parallel to the major base line and went three miles east and turned south again one mile, thence east one mile and met Estes. He continues saying Estes turned south off Boone's corner and that both lines (Boone's and Estes') hang on that point (Woods' pipe for MCL

192); "Estes went over and started off Boone's corner, and Boone's corner came off of the northwest corner of Block 46. * * * Now, Boone came out the Center Line to the west line of Block 46, and then he came from there south. Block 46 is three miles wide there, and that is the corner mentioned in my instructions for me to observe and construct from, and I went perpendicular from the general course of the Center Line down to the south line of Block 46, and then Boone went east three miles. * * * Yes, sir, I went south eight miles, and Boone went to the east, North 74° 40' East, for three miles, and then he came south one mile, and then went east one mile and they met on that line there and Bob (Estes) adopted Boone's corner there; so Bob swung on the same corner up there."

Boone's line, he says, was at right angles to the general course of the Center or base line. Twitchell continues: "I came down the west line of T & P Block 46, across Township 1 South in T & P Blocks 43, 44, 45, 46, Block B–7 and Block 40 Public School Land, because I was fitting those other blocks up there, and I was fitting Block 46 and I was fitting Block 40 too."

This testimony of Twitchell was offered originally by plaintiffs and subsequently by the defendants. It is not disputed. As we understand it, the defendants do not contend the ground line run off of the Woods pipe is not properly the west line of Block 46 if run as such, but that it was never intended to be such line but is merely the base line from which Block B–7 was surveyed. This testimony is consistent with the authority and instructions under which Twitchell worked.

■ As noted in the Flick case, supra, the Act of the Legislature directed the survey for the Public Schools all the lands within the T & P Reservation not already appropriated and that was the purpose of all Woods' work north and that is what Twitchell was instructed to do when he was sent south. As we observed in the case of Theisen v. Stanolind Oil & Gas Co., Tex.Civ. App., 210 S.W.2d 417, it was essential that Twitchell locate the boundaries of the surveyed and appropriated lands before he could locate and identify and properly sectionize the unsurveyed lands. Had Twitchell run his own base line and surveyed from it his Blocks before his work could have been completed it would have been necessary to locate the boundaries of the appropriated lands. It is inconceivable that he would have gone into that area and taken a chance on leaving unsurveyed any small strips between the surveyed and unsurveyed areas. That he did not take such chance is evidenced by his adjoinder calls for the two blocks. He doubtless knew, and it is elementary, as is contended by the defendants in a counter point, that a senior block cannot be fitted to a junior, but the senior will control the junior. We conclude, therefore, under the undisputed testimony, the rule announced in Gulf Oil Corporation v. Outlaw, 136 Tex. 281, 150 S.W.2d 777, and followed in State v. Ohio Oil Co., Tex.Civ. App., 173 S.W.2d 470, and by us in the Theisen case, supra, the Twitchell-Boone line, having been the first line identified on the ground as the west boundary line of Block 46 T & P, it is the official west line and must prevail as such.

■ We think the other points are not well taken, because if the west line of Block 46 were located and identified on the ground as claimed by the defendants then the fact it might conflict with B–7 would not control or alter its location. And, it is not where a surveyor intended to locate a boundary that controls but where he actually located it. Where the line is actually run is controlling, and not where the surveyor intended to run it or should have run it, Blake v. Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009 at page 1013(T). Nor do we regard the Flick case, supra, as decisive here. That case did not determine the location of the west line of Block 46, because that line was neither directly nor indirectly involved in that litigation. The issue in that case was whether or not Blocks 32 and B–27 had common boundaries. It is true a good deal is said about Twitchell's intention to coordinate his B Blocks with the existing T & P Blocks and to completely subdivide the area with reference to the adjoining prior appropriations and not to leave a vacancy between such blocks, but

as we have just noted that intention could not prevail over a ground location and would have little influence on actual ground work.

Our conclusions on the decisive issue in this case and what we have said disposes of the counter points presented in support of the judgment, many of which assert correct abstract propositions of law but we think not applicable to the undisputed facts of the case, except the point asserting estoppel. Shell Oil Company's engineer while surveying for his company discovered the asserted vacancy. He used the prorated 192 corner and ran out the boundaries of Block 46 from the monuments found on the Center Line and the common boundary between Blocks 45 and 46, together with a pipe supposed to mark the southwest corner of Survey 22 in Block 46. This resulted in a construction of the west line of Block 46 substantially as claimed by the defendants. R. L. Trott, for Shell, applied to purchase the strip as vacant. C. O. Wheeler, as owner of the lands enclosed with a portion of the strip (the area involved here and an additional mile north) exercised his preference right to purchase same as a good faith purchaser. Shell subsequently conveyed an interest in its mineral estate in Sections 15 and 16 to Stanolind, and the two companies jointly operate the properties. Based on these facts defendants assert Stanolind is estopped under the holdings in Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S. W.2d 767 and Petroleum Producers Co. v. Stolley, Tex.Civ.App., 137 S.W.2d 207 (T. C. A. writ dismissed, correct judgment). In each of those cases the facts are different in that the interested parties were in the suit asserting rights to the controverted area as vacant and the courts simply held they could not do that and in Stanolind Oil & Gas Co. v. State the Supreme Court was careful to say the decision was binding on the parties only to the suit as applied to the rights there asserted and adjudicated and if the area should thereafter be found to be a part of other surveys the decision should not prejudice the rights of others not parties to the suit. Stanolind was there a party to the vacancy application. Such is not the case here. Stanolind so far as the record is concerned, was never a party to the vacancy application involved here and does not claim under it but its claim is as owner of a mineral estate in sections 15 and 16, Block 46. In the Stolley case the inference is justified the parties there asserted rights in the vacancy, and it cannot be determined whether the Supreme Court approved what was said there in that connection or not, because the case was determinable on the issue of fact found adversely to the defendants. It is our conclusion there is no estoppel.

In accordance with the views heretofore noted, the judgment of the trial Court will be reversed and judgment here rendered declaring the west boundary of Block 46, T & P Ry. Co. Township 1 South to be the monumented line run by Twitchell and Boone from the Woods pipe as its northwest corner, asserted to be the east boundary of Block B-7, Public School Lands by the defendants, and that the Plaintiff, Stanolind Oil & Gas Company, recover against all the defendants the mineral interests sued for by it in and under the land lying between the line run by Twitchell and Boone as the west line of Block 46 and the east line of the Trott-Wheeler strip and extending from the south line of Section 16 to the north line of Section 15, Block 46, and that the plaintiff, Sun Oil Company, recover nothing since the interest sued for by it lies west of the Twitchell-Boone line.

PRICE, C. J., not participating.