C. O. WHEELER ET AL V. STANOLIND OIL & GAS COMPANY ET AL.

No. A-3609. Decided October 8, 1952.
(252 S. W., 2d Series, 149.)

420

*Whitaker, Turpin, Kerr, Smith & Brooks and Irby L. Dyer.* all of Midland, for petitioners.

The Court of Civil Appeals erred in failing to hold that Block 46, Township 1 South, T. & P. Ry. Co. survey must be located by its own monuments, field notes and other original locative evidence in that system of surveys, instead of by the adjoinder called for in the field notes of the junior survey near thereto. Weatherby v. Jackson, 123 Texas 213, 71 S. W. 2d 259; Garcia v. State, 274 S.W. 319; Jones v. Burkitt, 150 S.W. 275.

*George S. Terry, C. Sidney McClain, Turner, Rodger's, Winn, Scurlock & Terry,* all of Dallas, and *L. A. Thompson,* of Tulsa, Okla.

The Court of Civil Appeals correctly held that the 1901 Boone-Twichell survey of the West line of T. & P. Block 46, being the first official ground survey of a line which up to that date had only a theorectical location, was final and must prevail over any other location. Gulf Oil Corp. v. Outlaw, 136 Texas 281, 150 S. W. 2d 777; State v. Ohio Oil Co., 173 S. W. 2d 470; Theisen v. Stanolind Oil & Gas Co., 210 S. W. 2d 417.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Stanolind Oil and Gas Company, as owners of mineral interests in Sections 15 and 16 T. & P. Block 46, Township 1 South, and Sun Oil Company and Stanolind, as owners of mineral

interests in Sections 13 and 18, Block B-7, Public School Lands, brought suit against C. O. Wheeler, A. C. McGahhey, and Shell Oil Company, Inc., to try title to a narrow strip of land alleged to extend between the two blocks mentioned above, and which was patented to Petitioner Wheeler in 1941. The land lies in Winkler County. The respondents assert that the vacancy does not exist, and the question resolves itself to one of boundary, viz., the proper ground location for the west line of Block 46 Township 1, South. Block B-7 is to the west of Block 46. A nonjury trial resulted in a judgment that the plaintiffs take nothing. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of respondents. 247 S.W. 2d 187. For convenience, the parties will be referred to by their positions in the trial court.

Block 46 T. & P. and Block B-7, Public School Lands, are within the original T. & P. reservation, south of the "Center Line" of that reservation. An historical development of the T. & P. reservation may be found in State v. Flick, Tex. Civ. App., 180 S.W. 2d 371. For opinion purposes a brief review of a few salient facts will suffice.

In 1876 Texas & Pacific Railway Company surveyors ran and monumented the center line of the T. & P. reservation, an area forty miles wide on each side of the center line, along a general called course of S 77W. They also laid out blocks on each side of the center line and monumented the block lines on the ground. According to maps filed in the General Land Office the block lines were run at right angles to the center line on a called course of S 13 E. Later surveys have developed that the called course is not exactly the true course of either the center line or the block lines but the exact variation is not material to this decision. In 1884 another T. & P. surveying party remonumented the western portion of the center line, including that portion forming the north boundary of Block 46.

It is undisputed that the northeast corner of Block 46 is fixed at 189 MCL (mile center line), which point is monumented on the ground, and that the east line of the block is also monumented on the ground. These monuments fix the actual location of that line on the ground for they represent the footsteps of the surveyor and are to be accepted as controlling of calls for course and distance. Stafford v. King, 30 Texas 257, 274; Carter v. Texas Co., 126 Texas 388, 87 S.W. 2d 1079, 1080. On the other hand, the south and west lines of Block 46 were not monumented

on the ground by the T. & P. surveyors and were located only by office surveys, these surveys showing the west line to be perpendicular to the center line and parallel with the east line. A sketch of the area will be found in the opinion of the Court of Civil Appeals (247 S.W. 2d 189).

The T. & P. Railway Company failed to apply its certificates to the portion of the reservation lying west of Block 46, and, in 1900, acting pursuant to an act of the legislature, the Commissioner of the General Land Office appointed W. D. Twichell to survey as a part of the permanent school fund that part of the T. & P. reservation south of the center line and west of the T. & P. blocks. Twichell operated under a letter of instructions from the Commissioner of the General Land Office (see Flick v. State, supra, p. 379) and an oral injunction to accept as the northwest corner of Block 46 an iron pipe placed at or near 192 MCL by surveyor S.D. Woods in 1899. Acting under these instructions and beginning at Woods' iron pipe for the northeast corner thereof Twichell put in Public School Block B-7 immediately west of T. & P. Block 46, monumented the east line of such school block, and, in the field notes prepared therefor, called for adjoinder with T. & P. Block 46 at fifteen points. So far as is relevant to the decision of this case it may be said that it was the intention of the Land Commissioner and Twichell to locate Block B-7, Public School Lands, so that it had a common boundany with T. & P. Block 46.

1, 2. Our first task is to determine the proper method of constructing the west boundary line of T. & P. Block 46. The plaintiffs contend that this line should be constructed according to the general scheme used by the T. & P. in laying out the reservation, which scheme was to run the block lines perpendicular to the center line. Plaintiffs then assert that a line run on the ground at a right angle from any of three points on the center line recommended by different surveyor witnesses as the northwest corner of Block 46 would conflict with Block B-7 and eliminate any vacancy between the two blocks. The defendants counter with the proposition that the line should be constructed parallel with the monumented east line of Block 46, which line bears east from perpendicular. The Court of Civil Appeals thought the method of construction suggested by the defendants was "the more logical construction" but the court was of the opinion that the line fixed by Twichell had become the official line and that it was required to prevail as such.

An examination of the record shows that although the called

course for the block lines of the T. & P. reservation was perpendicular to the center line, the block lines concerning which testimony was given in this case were not actually run at right angles but are shown to bear eastward from the perpendicular. Moreover, the west lines of Blocks 44 and 45, both of which were monumented on the ground, are shown to be constructed practically paralled with each other. To construct the west line of Block 46 on a course parallel with its monumented east line —which is also the west line of Block 45—would make the shape of that block conform to the general configuration of the other T. & P. blocks immediately east of Block 46 and south of the center line. It seems reasonable that the parties should have intended that the blocks would be of the same general form and shape. On the other hand, to construct the west line of Block 46 on a course perpendicular to the general course of the center line would cause the south line of the block to be longer than its north line. We can hardly think that it was the intention of the parties that this result should be obtained. "The rules for the construction of grants and for ascertaining their boundaries, which have from time to time been announced by the court and have been acted on in establishing their lines, are all designed for the purpose of carrying out the intention of the grantor. When this intention is once made manifest, all else must yield to and be governed by it." Woods v. Robinson, 58 Texas 655. We approve the defendants' theory of constructing the boundary line in question.

But to sustain the judgment of the Court of Civil Appeals and their contention that there is no vacancy, the plaintiffs assert that under the rule announced in Gulf Oil Corp. v. Outlaw, 136 Texas 281, 150 S.W. 2d 777, and followed in State v. Ohio Oil Co., Tex. Civ. App., 173 S.W. 2d 470 (writ refused, W.O.M.), and Theisen v. Stanolind Oil & Gas Co., Tex. Civ. App., 210 S.W. 2d 417 (writ refused, N.R.E), Twichell's authority to locate and survey the land adjoining T. & P. Block 46 necessarily clothed him with implied authority to locate the west line of Block 46, and that therefore the line monumented by Twichell as the east line of Public School Block B-7 became also the official west line of T. & P. Block 46, which line theretofore had been only theoretical. The Court of Civil Appeals adopted this theory as decisive of the case. There is language in the cited cases, and particularly in the Outlaw case, that would seem to afford support for plaintiffs' position. In the Ohio Oil Co. and the Theisen cases the Courts of Civil Appeals but adopted and followed the rule announced in the language of the Outlaw case.

3   What was said by the court in the Outlaw case cannot be controlling here because in that case no land belonging to the State School Fund was being given away by the official location of a theretofore theoretical boundary. This case is ruled by the case of State v. Post, Tex. Civ. App., 169 S.W. 401, affirmed 106 Texas 468, 169 S.W. 407, wherein it was held that Article 7, Section 4 of the State Constitution prohibited a surveyor, the Land Commissioner, or even the Legislature from authorizing the extension of the lines of a patented survey so as to include public school lands. That principle has been reasserted in the cases of Brooks v. Slaughter, Tex. Civ. App., 218 S.W. 632, Turner v. Smith, 122 Texas 338, 61 S.W. 2d 792, and Weatherly v. Jackson, 123 Texas 213, 71 S.W. 2d 259.

4   Plaintiffs seek to distinguish the Post case from the case at bar on the ground that different statutes were involved. But of controlling force in the Post case was the constitutional provision, and that provision is controlling here also. Nor is it any valid distinction that in the Post case the lines of the land as patented were being extended by the surveyor in the course of a resurvey on the ground, whereas in the instant case the lines were being extended in an original survey on the ground of field notes that had existed theretofore only by virtue of an office survey. The tract of land here involved is small but the principle is large. Can it be supposed that by monumenting the line in question still further west Twichell could have alienated a large block of public school land? The power to dispose of public school land by gift is prohibited by the Constitution whether the gift be made through an error in relocating a boundary of land once before surveyed on the ground or through an error in locating on the ground a line theretofore fixed only by office survey. Considered in the light of the principle announced in State v. Post the intention of the Land Commissioner and of Twichell that the east line of Public School Block B-7 and the west line of T. & P. Block 46 should be coincident and that no small slivers of land should be left as vacant land cannot be given controlling force.

We agree with the Court of Civil Appeals that the holding in State v. Flick, supra, is not stare decisis of the issue here.

The plaintiffs have failed to establish that the land involved lies within the boundaries of T. & P. Block 46. It follows that the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered October 8, 1952.